[No. G045788. Fourth Dist., Div. Three. Oct. 1, 2012.]

JEAN BARBONI, Plaintiff and Appellant, v.
FRED TUOMI et al., Defendants and Respondents.

**COUNSEL**

Jay L. Chavkin; and Robert J. Wheeler for Plaintiff and Appellant.

Michael Maguire & Associates, Paul Kevin Wood and Brian Y. Fujita for Defendants and Respondents.

## OPINION

**MOORE, Acting P. J.**—Plaintiff Jean Barboni appeals a jury verdict in favor of defendants Fred and Linda Tuomi in this slip and fall premises liability case. She argues the trial court erroneously denied her motion for new trial based on juror misconduct, asserting that the jury wrongfully considered evidence of liability insurance against the court's instructions. We conclude the trial court properly considered competing juror declarations and found Barboni failed to establish juror misconduct. She also claims she is entitled to a new trial because the trial court permitted the Tuomis to designate their expert witnesses late. We conclude the court did not abuse its discretion on this point, and even if there was error, it did not constitute a miscarriage of justice requiring a new trial. We therefore affirm.

## I

## FACTS

### A. *Underlying Facts*

The basic facts underlying this case are fairly straightforward. As of January 2009, the Tuomis owned a home in Laguna Niguel. At the time, their primary residence was in Chicago, and they returned to Laguna Niguel a few days at a time for holidays and long weekends. Barboni is the owner of a pet sitting business. The Tuomis hired her to house-sit their Laguna Niguel home. Among other things, she retrieved mail, put out the trash, and checked on the home's security.

On the morning of January 23, 2009, Barboni arrived at the Tuomi residence and parked in the driveway. The driveway was a sloping concrete surface with a slate border. Although it had rained earlier, it was not raining at the time Barboni arrived, nor were the sprinklers operating. She walked toward the mailbox, and slipped on the wet slate border of the driveway. She suffered a fractured right ankle, torn ligament and related tissue damage, claiming medical damages exceeding $50,000 and total damages in excess of $500,000.

Barboni filed her initial complaint on January 11, 2010, and an amended complaint on February 10. She asserted causes of action for general negligence and premises liability.

B. *Exchange of Expert Witness Information*

The case proceeded in due course, and on September 30, 2010, the Tuomis served a demand for the exchange of expert witness information with a deadline of October 25. Neither party served expert witness information by that date.

During a settlement conference on November 5, Brian Fujita, counsel for the Tuomis, informed Barboni's attorney, Thomas N. Parsekian, through the settlement judge that they intended to file a late designation of expert witnesses. Fujita faxed the expert witness designation to Parsekian the same day. The letter accompanying the designation stated: "[T]he time for this designation was miscalendared. We are providing you with the designation at the present time and will work with you to schedule any depositions of the designated experts." Two experts were designated.

Parsekian did not accept the designation, and rejected Fujita's explanation that the date had been miscalendared, referring to that claim as "nonsensical, childish and dishonest." He further stated that if Fujita did not withdraw the designation, Parsekian would request sanctions.

On November 10, the Tuomis filed an ex parte application seeking an order allowing them to designate their expert witnesses late. The application stated the error was due to miscalendaring. November 12 was set as the date for the hearing, and on the same day, Barboni filed her opposition. The trial judge, David R. Chaffee, was unavailable that day. The judge who heard the application, James Di Cesare, took no action, ruling that Judge Chaffee should decide the issue.

On November 17, the Tuomis filed a second ex parte application on this issue, again characterizing the lapse as a calendaring error. The hearing was scheduled for November 19. On November 18, Barboni filed her opposition. Judge Chaffee does not hear oral argument on ex parte motions, but issued a minute order, which stated in relevant part: "Ex-parte application to permit tardy expert designation, or in the alternative to shorten time for service of motion and specially setting hearing date is requested by Defendants, Fred Tuomi and Linda Tuomi. [¶] The Court having fully considered the written ex parte application, now rules as follows: [¶] The Court grants the ex parte application to permit tardy expert designation. Order is signed and filed this date."

On November 23, the Tuomis sent Barboni a notice of ruling. On December 6, they sent a copy of the court's signed order.

Prior to the initial December 13 trial date, Barboni brought a motion in limine seeking to exclude the Tuomis from calling any expert witnesses at

trial due to the late designation. She argued the late designation did not provide her sufficient time to seek out, interview and retain experts in response. The Tuomis opposed, and Judge Chaffee denied the motion. At some time prior to March 24, Barboni designated Gregory Axten, a civil engineer, as a supplemental expert witness.

The trial did not actually begin until April 4, 2011, due to a number of continuances.

## C. *Relevant Trial Proceedings*

Prior to trial, the Tuomis filed a motion in limine to exclude any evidence of liability insurance coverage. Judge Chaffee granted this motion. The question of insurance was raised during voir dire, and the court told the jurors to ignore it. Additionally, at the conclusion of evidence, the court instructed the jury: "You must not consider whether any of the parties in this case has insurance. The presence or absence of insurance is totally irrelevant. You must decide the case based only on the law and the evidence." A copy of this instruction was also provided to the jury for its review during deliberations.

At trial, only one of the Tuomis' two designated witnesses, Peter J. Zande, testified. He was a "safety professional" and his testimony was limited to liability. He opined that the slate material was in good condition, was an appropriate surface for the driveway, and that the Tuomis were not negligent.

Barboni's supplemental expert witness Gregory Axten, a licensed civil engineer, also testified at trial. He testified that on a sloping driveway made of two surfaces, as was the case here, it is easy to slip on wet slate, which does not absorb water like concrete. Slate could be a "very dangerous condition when it's on a slope." He opined slate was an inappropriate surface for a sloped area.

At the conclusion of trial, the jury retired and reached a unanimous verdict, finding in favor of the Tuomis. Ultimately, they were awarded $7,843.99 in costs.

In July, Barboni filed a motion for new trial. As relevant on appeal, she argued the jury had improperly considered the issue of insurance, which we will discuss in further detail below. The trial court denied the motion, and Barboni now appeals.

II

DISCUSSION

A. *Juror Misconduct*

1. *Standard of review*

 Juror misconduct is one of the specified grounds for granting a new trial. (Code Civ. Proc., § 657, subd. 2.) The trial court must undertake a three-step process to evaluate a motion for new trial based on juror misconduct. The trial court must first "determine whether the affidavits supporting the motion are admissible. (Evid. Code, § 1150.)" (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 703 [40 Cal.Rptr.2d 384].) This, like any issue of admissibility, we review for abuse of discretion. (See *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 885 [57 Cal.Rptr.3d 454] ["[w]e review a trial court's decision to admit or exclude evidence under the abuse of discretion standard."].)

Second, "If the evidence is admissible, the trial court must determine whether the facts establish misconduct. [Citation.]" (*People v. Dorsey, supra*, 34 Cal.App.4th at p. 703.) "The moving party bears the burden of establishing juror misconduct. [Citations.]" (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 625 [84 Cal.Rptr.3d 285].) On review from a trial court's "determin[ation of] whether misconduct occurred, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.]' " (*People v. Majors* (1998) 18 Cal.4th 385, 417 [75 Cal.Rptr.2d 684, 956 P.2d 1137]; see *Jie v. Liang Tai Knitwear Co.* (2001) 89 Cal.App.4th 654, 666 [107 Cal.Rptr.2d 682].)

" 'Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial.' [Citation.]" (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 160 [72 Cal.Rptr.3d 369] (*Whitlock*).) On appeal, this court reviews the entire record, including the evidence, and makes an independent determination as to whether the misconduct was prejudicial. (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160–1161 [79 Cal.Rptr.2d 641].)

2. *Factual Basis*

In support of her motion for new trial, Barboni submitted the declaration of Juror Andrea H. She stated that although the court had instructed the jury that insurance was not to be considered and was totally irrelevant, "all of the

jurors disregarded this instruction." She also stated: "During deliberations by the jury, of which I was a member and present throughout the deliberations, the jury discussed and considered whether any of the parties had insurance, and that consideration was central to, had an impact on, and directly influenced the ultimate verdict that was rendered in the case. Specifically, the jury discussed the belief that the plaintiff, Jean Barboni, must have already been paid on a homeowner's insurance claim by an insurance company for the slip and fall injury that was the subject of the case. The jury wondered aloud and was concerned that a verdict in plaintiff's favor would be a 'double recovery.' The possibility of a 'double recovery' based on our assumption that Ms. Barboni had already been paid for her injuries by an insurance company, guided our discussion and ultimately our verdict; in fact, it was the main focus of our deliberations. In essence, the jury believed and discussed the idea that plaintiff had in effect already recovered money in the matter, and that she was therefore compensated previously due to the jury's belief that insurance had already paid on the claim."

Along with their opposition to the motion for new trial, the Tuomis submitted the declarations of eight jurors. We summarize the relevant portions of these declarations below.

Juror Sergio E. declared that he did "not recall any discussion of insurance during deliberations. I do not recall any mention whether plaintiff had already been compensated by homeowners insurance, or of a possible double recovery." The only time he recalled insurance being discussed was during voir dire, and he stated that insurance "was not a factor in the jury's deliberations." He based his own decision "on the evidence I heard at trial. I did not consider insurance in reaching my decision."

Juror Amanda M. was the jury foreperson. She also did "not recall any mention of insurance. In particular, I do not recall any mention whether plaintiff had already been compensated by homeowners insurance, or of a possible double recovery." Noting that the decision was unanimous, she stated she based her own decision "on the evidence introduced at trial," and insurance was not a factor.

Juror Rickey Y. also did not recall any discussion of insurance during deliberations. He also did not recall anyone expressing the belief that Barboni had already been compensated, or a possible double recovery. "During deliberations the jurors focused on the evidence presented at trial. Jurors commented on their belief that plaintiff was responsible for the accident, and that plaintiff had been clumsy. There was also discussion to the effect that plaintiff was trying to exaggerate her damages, and that she was not credible. Insurance was not a factor in these discussions." Further, he stated that "[i]nsurance had nothing to do with my decision."

Juror Tino A. also declared that he did not recall any discussion of insurance, prior compensation by an insurer, or a potential double recovery. He based his decision on the evidence he heard, and insurance "was not a factor in my decision."

Juror John L. similarly recalled no discussion of insurance. He declared there was no discussion of possible double recovery. Jury deliberations focused on the evidence, and "[j]urors commented on the fact that plaintiff had been at the property for three years without incident, and that she was familiar with the property. There was also discussion that the property was well maintained." Further, concern was expressed that "plaintiff was trying to exaggerate her injuries." And that "plaintiff and her attorney were suggesting that the homeowners should pay because they were wealthy and snobbish, and that plaintiff did not want to be accountable for her own actions." Based on the evidence, he did not believe defendants were liable, and "[i]nsurance had nothing to do with my decision."

Juror Sandra S. declared: "Almost immediately from the beginning of deliberations, jurors expressed their opinion that this was an accident for which the homeowners were not responsible, and they should not have to pay." While she recalled "a very brief mention by someone that defendants probably had homeowners insurance[,] [t]here was no discussion regarding whether plaintiff had already received compensation from the homeowners' insurer, nor was there any mention of a possible double recovery. The existence or non-existence of insurance was not a factor in jury deliberations." Further, "[d]uring deliberations jurors voiced their opinion that plaintiff was responsible for the accident. They noted that plaintiff had been at the property for three years, and that she knew the property well. There was a discussion that the owners took good care of the property, and that they hired not only a house sitter, but a gardener and housekeeper as well. Jurors stated their belief that the manner in which plaintiff fell indicated that defendants were not responsible." Sandra S. also stated the jury "discussed their belief that plaintiff and her attorney attempted to make far more out of this case than was actually there. There were also questions regarding the manner in which plaintiff handled the matter," alluding to Barboni's decision not to call 911, but to go to her mother's house and from there to the hospital. "Based upon the evidence I heard at trial, I do not believe that defendants were liable for this slip and fall accident. Insurance had nothing to do with my decision."

Juror Nathaniel D. stated the jurors "did not talk about homeowners insurance during jury deliberations. The jurors did not discuss whether plaintiff received money from the homeowners' insurer, or any discussion about a possible double recovery." The jurors did discuss "their belief that Ms. Barboni was at fault for the accident." He did not believe defendants were liable, and insurance was not a factor in his decision.

Juror Sergio F. stated the jury focused its discussion on the evidence, although "[o]ne juror briefly mentioned the possibility that there was home-owners insurance. However, we immediately left this issue because there was no evidence on it. There was no discussion regarding whether plaintiff had already been compensated by homeowners insurance, and no mention of a possible double recovery." He based his decision on the evidence, and "[i]nsurance was not a factor in my decision."

In sum, five of these eight jurors did not recall any discussion of insurance at all. One stated there was no such discussion, and two recalled brief mentions of insurance that were abandoned rather quickly. All eight declared their decisions were not based on any issue involving insurance, but the evidence presented at trial.

After oral argument on the new trial motion, the trial court issued its ruling. The court indicated Barboni's motion was based on the declaration of one juror, Andrea H. "She states that the jury considered whether any of the parties had insurance, and that that consideration was central to and had an impact on and directly influenced the ultimate verdict in the case."

With regard to the eight jurors filing declarations on behalf of the Tuomis, the court stated: "Most do not recall any discussion of insurance. For those that do, there obviously—from their recitation, there was no serious discussion or consideration that such might lead to a double recovery for the plaintiff. The [Juror Andrea H.] declaration or affidavit has no facts to support the conclusions that the alleged discussion was central to or directly influenced the ultimate verdict. The other eight jurors are unequivocal that it had no role in the verdict."

The court continued: "The discussion by Mr. Parsekian that or argument that because two of the other eight jurors admit the subject came up, that they improperly, 'considered' the evidence, does not actually prove out when the review of those declarations is made. Mere mention of insurance does not constitute consideration. The other eight jurors are unanimous that there was no extended discussion, no consideration of any double recovery, and no impact on the verdict. There is no showing of prejudice from the mere mention of insurance. In the court's view the plaintiff has failed to establish juror misconduct as a basis for [new] trial in this matter."

### 3. *Admissibility of Declarations*

The first issue is whether the juror declarations were admissible. The trial court raised this issue somewhat indirectly, referring to the conclusions without evidentiary support in the Juror Andrea H. declaration, specifically

that "the alleged discussion was central to or directly influenced the ultimate verdict," and giving such statements little or no weight.

"Evidence of jurors' internal thought processes is inadmissible to impeach a verdict. [Citations.] Only evidence as to objectively ascertainable statements, conduct, conditions, or events is admissible to impeach a verdict. [Citations.] Juror declarations are admissible to the extent that they describe overt acts constituting jury misconduct, but they are inadmissible to the extent that they describe the effect of any event on a juror's subjective reasoning process. [Citation.] Accordingly, juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict. [Citations.]" (*Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124–1125 [105 Cal.Rptr.3d 485], fn. omitted.)

While the above quoted part of Juror Andrea H.'s declaration, and several other parts of it, could have been found inadmissible on these grounds, the trial court apparently considered the appropriate weight they should be given, tacitly deeming them admissible. Given that neither party attacks the admissibility of any of the declarations on these grounds, we find no abuse of discretion in deeming the declarations admissible.

### 4. Evidence of Misconduct

The trial court's second step, if the evidence is admissible, is to "determine whether the facts establish misconduct. [Citation.]" (*People v. Dorsey, supra*, 34 Cal.App.4th at p. 703.) As we noted above, the burden of establishing juror misconduct lies with the party moving for a new trial. (*Donovan v. Poway Unified School Dist., supra*, 167 Cal.App.4th at p. 625.) The court considered the competing declarations, giving no weight to Juror Andrea H.'s conclusions regarding how the alleged discussion of insurance impacted the internal thought processes of the other jurors, and determined misconduct had not been established.

On appeal, we must accept the trial court's findings if supported by substantial evidence. (*People v. Majors, supra*, 18 Cal.4th at p. 417.) " 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. [Citation.]" (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651 [51 Cal.Rptr.2d 907].) Further, we do not second-guess the calls the trial court made regarding credibility. (*Fredrics v. Paige* (1994) 29 Cal.App.4th 1642, 1646 [35 Cal.Rptr.2d 246].)

Here, the evidence was more than substantial. Five jurors, in their sworn declarations, recalled no mention of insurance at all, one stated it was

not discussed, and two recalled only brief mentions—but as the trial court pointed out, "Mere mention of insurance does not constitute consideration." More importantly, all eight jurors stated that insurance was not a factor in their decisions. Several gave additional details regarding why they decided what they did and how those factors were discussed.

Barboni labors mightily, however, arguing that because five jurors did not recall the discussion of insurance, that does not mean such discussion did not happen. She is technically correct, but misses several important points, including the standard of review on appeal and the fact that it was her burden to establish misconduct, not the Tuomis' burden to establish that it did not occur. Further, the trial court, when considering that five jurors did not at all recall any mention of insurance, could reasonably have concluded that any mention was, as two other declarations indicated, brief and not determinative.

Barboni does not cite to any case where the mere mention of insurance— and at best, that is all the court decided happened here—establishes jury misconduct. While she claims we cannot know how the mention of insurance impacted the jury's deliberative process, she ignores the fact that eight jurors have plainly stated insurance had no impact whatsoever.

The cases Barboni does cite are not especially helpful to her. For example, *Smith v. Covell* (1980) 100 Cal.App.3d 947 [161 Cal.Rptr. 377], was a personal injury case. Repeated instances of juror misconduct were cited in support of the motion for new trial, including one juror's discussion of his own genetic back condition and that despite his pain he could still work. Other comments by jurors included an expression of dislike for lawsuits and the opinion that awarding high verdicts was the cause of high insurance rates and would have that effect in this case. Other jurors opined that the plaintiff was not entitled to damages for loss of consortium because a husband takes a vow when he marries and has an obligation to stay with his wife. (*Id.* at pp. 952, 954–955.) Unlike the instant case, the declarations evidencing the misconduct in *Smith*, provided by two dissenting jurors, were uncontradicted. (*Id.* at p. 952.)

Similarly, in *Tapia v. Barker* (1984) 160 Cal.App.3d 761 [206 Cal.Rptr. 803], another case cited by Barboni, a motion for new trial was again decided on two uncontradicted declarations from dissenting jurors. (*Id.* at pp. 764–765.) Thus, the issue was not whether misconduct occurred, but whether it was prejudicial, an issue we need not reach at this juncture. "Where no affidavits or declarations are introduced to counter the evidence of jury misconduct proffered on a new trial motion, the acts are deemed established, and the only issue is whether they are harmful or prejudicial. [Citations.]" (*Id.* at p. 766.) Here, because declarations to counter the evidence were introduced, no such presumption applies.

Barboni also points to *Jones v. Sieve* (1988) 203 Cal.App.3d 359 [249 Cal.Rptr. 821] (*Jones*); *McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256 [83 Cal.Rptr.2d 734] (*McDonald*); and *Whitlock, supra*, 160 Cal.App.4th 149. In *Jones* and *Whitlock*, motions for new trial were decided by the trial court based only on the juror declarations provided by the moving party—no countervailing declarations were submitted. (*Jones, supra*, 203 Cal.App.3d at p. 364; *Whitlock, supra*, 160 Cal.App.4th at p. 156.) In *McDonald*, the plaintiff relied on the declaration of a dissenting juror, Brown, and defendants submitted declarations by three other jurors. As the court noted, "All of them confirmed Brown's account to some extent, and none contradicted it." (*McDonald, supra*, 71 Cal.App.4th at p. 262.) In another case cited by Barboni, *Andrews v. County of Orange* (1982) 130 Cal.App.3d 944, 956–957 [182 Cal.Rptr. 176], disapproved on other grounds in *People v. Nesler* (1997) 16 Cal.4th 561, 582, fn. 5 [66 Cal.Rptr.2d 454, 941 P.2d 87], the court noted: "[V]iewing the evidence, we are left with incidents of misconduct which were either admitted or established by uncontroverted declarations." (*Andrews v. County of Orange, supra*, 130 Cal.App.3d at p. 957.)

Thus, all of the cases cited by Barboni are relevant to the issue of prejudice if misconduct did occur, but none is particularly relevant to determining whether misconduct happened where both sides produce admissible declarations that flatly contradict each other. Barboni's argument assumes that Juror Andrea H.'s declaration was the only one that correctly stated the facts, but she is wrong. There were eight other equally admissible declarations that disagreed with her.

█ Simply put, this case comes down to a battle of the declarations, and therefore, substantial evidence. One juror declared that insurance was discussed and formed the entire basis for the jury's verdict. Eight other jurors disagreed, stating insurance had nothing to do with their verdict. The trial court had substantial evidence upon which to agree with the eight rather than the one, and it was not legal error to conclude the mere mention of insurance was not misconduct. We therefore conclude the trial court did not err by concluding no juror misconduct occurred. Because no misconduct occurred, we need not decide the issue of prejudice.

## B. *Late Designation of Expert Witnesses*

Barboni argues the trial court abused its discretion when it permitted the Tuomis to designate their expert witnesses late and by allowing Zande to testify at trial. Barboni's "burden is to demonstrate the court's 'discretion was so abused that it resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 456 [134

Cal.Rptr.2d 756], disapproved on another ground in *People v. Freeman* (2010) 47 Cal.4th 993, 1006–1007, fn. 4 [103 Cal.Rptr.3d 723, 222 P.3d 177].) Thus, even where evidence has been erroneously admitted, the judgment shall not be reversed unless the reviewing court believes the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, § 353.)

Barboni relies on the language of the minute order granting the Tuomi's ex parte application, which stated: "The Court having fully considered the written ex parte application, now rules as follows . . . ." According to Barboni, because the court did not specifically mention her opposition papers, it must follow the court never read them. This argument does not hold water. The burden to demonstrate error is on Barboni. The notion that because the court did not specifically mention her opposition in the minute order, it was therefore never read, is pure speculation on her part, regardless of how the court might have phrased past orders. She has simply not established error. We decline to impose on the trial bench an unduly burdensome requirement that any order issued without a hearing must specifically state that an opposition was considered.

Another reason why Barboni's argument that she was never heard must fail is the fact that she filed a motion in limine on the same issue prior to the initial trial date. Less than a month after the court granted the Tuomis' ex parte application, Barboni filed a motion in limine on the same issue, making many of the same arguments. She does not argue the court never read or considered this motion; indeed, the trial court denied it in open court, and the denial was reflected in a minute order. Thus, any argument that she was never heard on this issue is misplaced. Her reliance on *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281 [77 Cal.Rptr.3d 305], a case in which one party was never allowed to fully present his case, is therefore inapposite.

At oral argument, Barboni cited to *Fairfax v. Lords* (2006) 138 Cal.App.4th 1019 [41 Cal.Rptr.3d 850] in support of her position. In that case, the defendant served a demand for the exchange of expert witness information, and the plaintiff timely designated a retained expert. He also stated that he reserved his right to call any treating physicians as witnesses. On the same date, the defendant served a document that purported to be a designation of expert witnesses, but contained no such information. Instead it stated that defendant " 'hereby gives notice that he is not designating any retained experts for the first exchange of expert witness information.' He went on to state, however, that he 'expressly reserves the right to designate experts in rebuttal to [the plaintiff's] designations.' " (*Id.* at p. 1022.) Several weeks later, the defendant issued a second designation of expert witnesses, naming two witnesses designed to counter the plaintiff's expert. (*Id.* at p. 1023.) He also reserved the right " 'to provide a supplemental designation of experts

regarding all issues for which plaintiff designates an expert.' " (*Ibid.*) Over the plaintiff's objection, the court allowed the defendant's experts to testify. (*Id.* at pp. 1024–1025.)

On appeal, this court held the trial court's ruling was improper. The defendant's initial exchange of information was not in compliance with Code of Civil Procedure former section 2034. "The effect of [the defendant's] expert designation was to delay his own list of 'expected' witnesses until after he had seen the list put forth by [the plaintiff]. [The defendant] does not deny that this was his express intent, and instead argues it is only 'prudent' for a defendant to do so." (*Fairfax v. Lords, supra,* 138 Cal.App.4th at p. 1026.) The court held the defendant's argument was "simply inconsistent with the clear statutory requirement of a 'simultaneous' exchange." (*Ibid.*)

This is not the situation here. The Tuomis' late designation of their expert witnesses was not an intentional strategic move to wait to see who Barboni designated—it was the result of error, an explanation the trial court accepted, and which we are not in a position to second-guess, regardless of Barboni's belief that this explanation was untrue. We do not accept the argument that the Code of Civil Procedure's requirement of a simultaneous exchange is subject to so strict an interpretation that it cannot ever give way to situations where excusable neglect occurs. Here, while the exchange was not simultaneous, it was also not crafted by one party to put the other at a disadvantage in designating experts last. Indeed, the Tuomis ended up designating their experts first. Given the facts of this particular case, we find no abuse of discretion.

Even assuming that Barboni is correct and she was never heard on this issue (which she is not) she has not established prejudice. The question is whether allowing the late expert designations, and the expert testimony, resulted in a miscarriage of justice. It did not. Because of the continuances, Barboni ultimately had over four months to prepare for the expert testimony at trial. Further, she was the equal beneficiary because the late designations permitted the testimony of Axten, her expert, which was entirely to her benefit. She claims that because Zande testified specifically on the issue of whether the Tuomis were negligent, Zande's testimony was therefore somehow more dispositive than Axten's, who testified, among other things, that slate could be a "very dangerous condition when it's on a slope" and that it was inappropriate for a sloped area. Axten's testimony was entirely to Barboni's benefit. At worst, the two experts simply canceled each other out. In no reasonable universe can the expert testimony here be considered so prejudicial as to result in a miscarriage of justice.

## III

## DISPOSITION

The judgment is affirmed. The Tuomis are entitled to their costs on appeal.

Aronson, J., and Fybel, J., concurred.