Filed 6/1/16  Bullard v. Patel, M.D., Inc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VICKIE BULLARD et al., Plaintiffs and Appellants, v. RAVI PATEL, M.D., INC., et al., Defendants and Respondents. | F069673 (Super. Ct. No. S-1500-CV-270024) **OPINION** |

APPEAL from an order of the Superior Court of Kern County.  J. Eric Bradshaw, Judge.

Hoyt E. Hart II and Kyle W. Jones for Plaintiffs and Appellants.

Cole Pedroza, Curtis A. Cole, Cassidy C. Davenport; Law Offices of LeBeau and Dennis R. Thelen for Defendants and Respondents.

-ooOoo-

In this medical malpractice action, the jury rendered a verdict in favor of defendant on some claims and awarded damages to one of the plaintiffs on the remaining claim.  Plaintiffs appeal, asserting the trial court erred in denying their motion for new trial based on juror misconduct.  We find no error and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff, Vickie Bullard, was diagnosed with Valley Fever (coccidioidomycosis) in April 2002. She took oral fluconazole pills for it for four or five months and was released from treatment. In December 2002, she underwent gastric bypass surgery. She was in good health until 2006, when a chest X-ray and CT scan revealed a spot on her lung. At that time, Vickie[1] worked for defendant, Comprehensive Blood and Cancer Center (CBCC); she consulted Dr. Ravi Patel at CBCC and he recommended a biopsy. She underwent two needle biopsies in an attempt to determine the nature of the nodule on her lung. She was sent to a doctor at the University of California, Los Angeles, who removed the nodule by wedge resection. It was determined to contain active coccidioidomycosis, a return of her Valley Fever. She was treated with fluconazole.

In mid-2008, Vickie began feeling unwell. She consulted Dr. Ramon Vera, a specialist in infectious diseases who worked for CBCC. Dr. Vera ran tests; he had Vickie admitted to the hospital in January 2009, where she was treated for Valley Fever with intravenous (IV) infusions of amphotericin b. After discharge, she was to have infusions of Abelcet, a related medication less strong than amphotericin b, every other day for 12 weeks. The infusions were to take place at CBCC.

Vickie went on Friday, February 6, 2009, for her third infusion of Abelcet at CBCC. Abelcet was unavailable that day; nurses who were present that day testified they understood nurse Elizabeth Eastwood had communicated with Dr. Vera, who was not at CBCC at the time, and he had approved use of amphotericin b instead.[2] There was a computer entry reflecting Dr. Vera ordered the substitution by telephone and Eastwood entered the order in the computer. Vickie reacted to the infusion with severe nausea and vomiting. The nurses discontinued the infusion before it was finished.

---

[1]  For convenience and clarity, plaintiffs will be referred to by their first names because they share a last name. No disrespect is intended.

[2]  Nurse Eastwood did not testify.

The following Monday, when Vickie returned for hydration, Dr. Vera discovered she had been given an excessive dose of amphotericin b on Friday. He admitted her to the hospital. At that time, Vickie had elevated creatinine, a measure of kidney function. She was seen by a cardiologist and a nephrologist. Her creatinine gradually declined and she was discharged on February 13, 2009.

In April 2009, she returned to the hospital and was treated with IV infusions of amphotericin b. When she was discharged, the doctor then treating her Valley Fever attempted to use oral medications, but due to her prior gastric bypass surgery, she was not able to absorb the oral medication. As a result, she underwent daily IV infusions of fluconazole for over three years. Vickie experienced a series of infections at the IV line, which required several hospitalizations. Her treatment with infusions of fluconazole ended in June 2013.

Vickie sued CBCC for medical malpractice and medical battery, alleging she was given an overdose of amphotericin b, without disclosure to her of the risks of that medication and without a physician's order for the substitution of that medication for Abelcet. She additionally alleged the needle biopsies and wedge resection should not have been performed, because they caused the dissemination of her Valley Fever. As a result, she alleged, she suffered injury to her internal organs, including her kidneys, and exacerbation of her Valley Fever, rendering her disabled and unable to work. Vickie's husband, John, sued for loss of consortium.

The matter was tried to a jury. At the outset of trial, defendant admitted negligence and causation in connection with the administration of amphotericin b to Vickie on February 6, 2009; it disputed the nature and extent of any claimed injury or damages, however. During the trial, there was conflicting expert evidence regarding whether plaintiff suffered any permanent injury to her kidneys as a result of the amphotericin b overdose, and whether, as a result of the overdose, her medication options for treatment of Valley Fever were limited. There was also conflicting expert evidence

3.

regarding whether a needle biopsy or wedge resection would disturb a granuloma and cause a recurrence or dissemination of Valley Fever.

On the admitted medication error claim, the jury awarded Vickie $43,000. It found in favor of defendant on Vickie's other claims of negligence and medical battery. It awarded no damages on John's claim for loss of consortium.

Plaintiffs moved for a new trial, alleging jury misconduct. They presented the declaration of the jury foreperson, Juanita Sullivan, who described various statements made by other jurors during deliberations. Plaintiffs argued some jurors were hostile and refused to deliberate, brought up and discussed matters that were not in evidence, and failed to follow the law as explained by the trial court. Defendant opposed the motion and presented the declaration of a juror that contradicted most of Sullivan's statements. With their reply, plaintiffs submitted a supplemental declaration of Sullivan and the declaration of another juror, essentially agreeing with Sullivan.

The trial court sustained defendant's objection to the reply declarations on the ground they were untimely and struck both declarations. It sustained some objections to Sullivan's original declaration and defendant's opposing declaration. The trial court denied the motion for a new trial. Plaintiffs appeal, challenging the denial of the motion.

### DISCUSSION

I.      **Standard of Review**

The verdict may be vacated and a new trial ordered on any of several specified grounds, including misconduct of the jury. (Code Civ. Proc., § 657, subd. (2).) "[A] trial judge is accorded a wide discretion in ruling on a motion for new trial and … the exercise of this discretion is given great deference on appeal." (*Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.) On appeal, the judgment or order is presumed correct and the burden is on the appellant to affirmatively demonstrate error. (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.)

4.

"The trial court must undertake a three-step process to evaluate a motion for new trial based on juror misconduct. The trial court must first 'determine whether the affidavits supporting the motion are admissible.'" (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345 (*Barboni*).) Admissibility of evidence is reviewed for abuse of discretion. (*Ibid*.) "Second, 'If the evidence is admissible, the trial court must determine whether the facts establish misconduct. [Citation.]' [Citation.] 'The moving party bears the burden of establishing juror misconduct.'" (*Ibid*.) In reviewing the determination of misconduct, "'"[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence."'" (*Ibid*.) "Weighing the credibility of conflicting declarations on a motion for a new trial is uniquely within the province of the trial court." (*Wagner v. Doulton* (1980) 112 Cal.App.3d 945, 948–949 (*Wagner*).) In the absence of a statement of decision or findings of fact, "the reviewing court must conclude that the trial court made all findings necessary to support the judgment under any theory which was before the court." (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550.)

"'"Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial." [Citation.]' [Citation.] On appeal, this court reviews the entire record, including the evidence, and makes an independent determination as to whether the misconduct was prejudicial." (*Barboni*, *supra*, 210 Cal.App.4th at p. 345.)

## II.    Admissibility of Evidence

### A.    *Reply declarations*

Plaintiffs presented Sullivan's declaration in support of their motion. Defendant presented the declaration of one juror, Noah Grundvik, in response. With their reply papers, plaintiffs submitted a supplemental declaration of Sullivan and the declaration of another juror, Esmeralda Garcia. Defendant apparently raised an oral objection to the

declarations plaintiffs submitted with their reply papers,[3] and the trial court sustained the objection on the ground the reply declarations were untimely.

"The general rule of motion practice … is that new evidence is not permitted with reply papers.…  '[T]he inclusion of additional evidentiary matter with the reply should only be allowed in the exceptional case …' and if permitted, the other party should be given the opportunity to respond." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537–1538.)  "Whether to accept new evidence with the reply papers is vested in the trial court's sound discretion, and we may reverse the trial court's decision only for a clear abuse of that discretion." (*Carbajal v. CWPSC, Inc*. (2016) 245 Cal.App.4th 227, 241.)

When notice of entry of judgment is served by the court clerk or a party, the power of the trial court to rule on a motion for new trial expires 60 days after mailing of the notice to the moving party.  (Code Civ. Proc., § 660.)  If the trial court does not rule on the motion within that time, the effect is a denial of the motion by operation of law. (*Ibid*.)  Thus, when the trial court was presented with plaintiffs' motion, it had a limited time within which to hear and rule on it.  If it had considered the new declarations plaintiffs filed with their reply papers, in fairness to defendant, it should have permitted defendant to respond.  The hearing of the motion took place six court days before the expiration of the 60-day period.  Thus, there was little time left in which to permit defendant to respond (possibly with further juror declarations), to hear the motion, and to rule on it.

In light of the statutorily limited time within which a motion for new trial may be filed, heard, and ruled on, it is not unreasonable to expect the moving party to gather all of its supporting evidence and present it with its moving papers.  The version of Code of Civil Procedure section 659a in effect in 2014, when the motion for new trial was filed

---

[3]     No reporter's transcript or other record of the oral proceedings at the hearing of the motion for new trial was included in the record on appeal.

6.

and heard, provided that the party moving for a new trial had 10 days from the filing of its notice of intent to move for a new trial within which to serve and file "any affidavits intended to be used upon such motion." Other parties had 10 days to serve and file counteraffidavits. (Code Civ. Proc., former § 659a.) There was no provision for serving and filing reply papers.[4] (See *Linhart v. Nelson* (1976) 18 Cal.3d 641, 644 ["the provision requiring the moving party to file all affidavits within 10 days of notice of motion … makes clear that opposing parties are to be apprised not only of grounds but also of the entire presentation in time to allow counteraffidavits"].)

We conclude the trial court did not abuse its discretion by sustaining defendant's objection to the declarations filed with plaintiffs' reply.

### B.       *Objections to Sullivan declaration*

Defendant objected to all of the factual statements in Sullivan's declaration on the ground they violated Evidence Code section 1150, lacked foundation, and constituted speculation and hearsay. In response, plaintiffs asserted the statements were admissible pursuant to Evidence Code section 1150. Evidence Code section 1150 provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).)

---

**4**       The current version of Code of Civil Procedure section 659a provides that the party moving for a new trial has 10 days from the filing of its notice of intent to move for a new trial within which to serve and file "any brief and accompanying documents, including affidavits in support of the motion." It allows the responding party 10 days to serve and file "any opposing briefs and accompanying documents, including counter-affidavits." (*Ibid*.) The moving party then has five days to serve and file "any reply brief and accompanying documents." (*Ibid*.) Conspicuously absent from the provision for reply papers is any mention of reply affidavits.

This section "'[draws a] distinction between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning process of the individual juror, which can be neither corroborated nor disproved.'" (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 413.) It "limits impeachment evidence to 'proof of overt conduct, conditions, events, and statements.... This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under [Evidence Code] section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration.'" (*Ibid.*) The limitation "serves a number of important policy goals: It excludes unreliable proof of jurors' thought processes and thereby preserves the stability of verdicts. It deters the harassment of jurors by losing counsel eager to discover defects in the jurors' attentive and deliberative mental processes. It reduces the risk of postverdict jury tampering. Finally, it assures the privacy of jury deliberations by foreclosing intrusive inquiry into the sanctity of jurors' thought processes." (*Id.* at p. 415, fn. omitted.)

Plaintiffs do not challenge the ruling on any specific objection. Rather, they generally contend Sullivan's declaration reported overt statements of the jurors, rather than reflecting thought processes. Statements concerning some jurors' hostility, refusal to consider exhibits, "pushing for a quick and cheap result," and going along with the hostile or aggressive jurors because they were unwilling to fight reflected the thought processes of jurors or the impressions or conclusions of the declarant, rather than overt statements or acts of the jurors. As such, the trial court properly sustained objections to them. Statements regarding why some jurors did not want to award damages for certain losses also reflected their thought processes and were properly excluded. Plaintiffs have not established any abuse of discretion in the trial court's rulings on defendant's objections to the Sullivan declaration.

8.

## III.  Whether the Facts Establish Misconduct

We next consider whether the admissible evidence established juror misconduct. "The determination by a trial court of a motion for a new trial submitted on affidavits which present conflicting facts is a determination of those controverted facts in favor of the prevailing party."  (*Young v. Brunicardi* (1986) 187 Cal.App.3d 1344, 1350–1351.) "Weighing the credibility of conflicting declarations on a motion for a new trial is uniquely within the province of the trial court."  (*Wagner*, *supra*, 112 Cal.App.3d at pp. 948–949.)

The admissible evidence in the Sullivan declaration was as follows:  "One of these jurors argued that Vickie was insane anyway because of her history of antidepressant use. Several jurors argued that the overdose was just an accident, not anybody's fault.  Some jurors argued that Vickie must have Munchausen's Syndrome, that she was deliberately causing her line infections and complications to get the sympathy of medical caregivers. After this, Juror #8 told how differently his wife does her infusions."  The aggressive jurors "argued that without the tummy tuck and breast enhancement she could have been cured of Cocci."

In opposition to plaintiffs' motion, defendant presented the Grundvik declaration. In the portion of the declaration the trial court found admissible, Grundvik stated he had no memory of any juror ever commenting on Vickie's sanity.  Further, "[n]o juror ever said that Mrs. Bullard intentionally made herself sick.  What I recall being discussed was that with her illness, she was very aware of her many medical problems and because of that fact, she took note of everything that she felt was wrong with her.  To my memory, no juror talked about the plaintiff having a psychological condition of any kind or stated that Mrs. Bullard made herself ill on purpose."

Grundvik's recollection of the discussion was consistent with the testimony of Dr. Miller, a rehabilitation physician specialist called as an expert witness by plaintiffs. Dr. Miller testified that, as a result of the overdose and Vickie's subsequent care and

9.

treatment, she suffered "a very serious psychological disturbance" that went untreated for years "to the point where now it's a severe fixated abnormality." He explained that Vickie felt the overdose "seriously caused her severe physical problems. She wasn't able to recover from it. She wasn't able to go back to work. She felt that she had permanent injuries." She developed severe depression and a conversion disorder; Dr. Miller described a person with a conversion disorder as: "somebody that believes that they are severely disabled, even though there is not really enough physical reason to explain it. The person actually believes they are and acts like they are," even though there is no medical explanation for the person's symptoms. Dr. Miller explained that Vickie felt she was an invalid, and felt her medical conditions to a greater degree than would be expected from her actual physical problems.

Construing the controverted facts in favor of the prevailing party, we conclude the trial court believed the Grundvik declaration and rejected Sullivan's contrary testimony. Plaintiffs argue that the Grundvik declaration did not directly contradict all of Sullivan's statements. They assert without citation of authority that "[u]ncontradicted acts of misconduct are deemed established." They contend Sullivan's uncontradicted statements must be treated as established, and those statements demonstrated juror misconduct. That is not the case.

In *Lankster v. Alpha Beta Co*. (1993) 15 Cal.App.4th 678, the trial court found juror misconduct was demonstrated by the declarations submitted by the plaintiff, where the defendant had submitted no counterdeclarations. (*Id*. at pp. 681–682 & fn. 1.) "Where no affidavits or declarations are introduced to counter the evidence of jury misconduct proffered on a new trial motion, the acts are deemed established, and the only issue is whether they are harmful or prejudicial." (*Tapia v. Barker* (1984) 160 Cal.App.3d 761, 766.) When declarations that counter the moving party's evidence are introduced, however, no such presumption applies. (*Barboni, supra,* 210 Cal.App.4th at p. 350.)

"'When an issue is tried on affidavits … and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.'" (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 108.) "Weighing the credibility of conflicting declarations on a motion for a new trial is uniquely within the province of the trial court." (*Wagner*, *supra*, 112 Cal.App.3d at pp. 948–949.) The trial court, acting as the trier of fact, is the exclusive judge of the credibility of the evidence and can reject any evidence as unworthy of credence, even uncontradicted testimony. (*Oldenburg v. Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 979.) "This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479, fn. omitted (*Shamblin*).)

The Grundvik declaration did not directly address or contradict Sullivan's statements that "[s]everal jurors argued that the overdose was just an accident, not anybody's fault," "Juror #8 told how differently his wife does her infusions," and jurors "argued that without the tummy tuck and breast enhancement she could have been cured of Cocci." The trial court may have discounted the credibility of these uncontradicted statements, based on the conflict in the other evidence. It also may have disbelieved the testimony regarding the "tummy tuck and breast enhancement" based on the evidence presented at trial. Our review of the record did not disclose any evidence of "breast enhancement." Thus, the trial court had grounds to doubt the veracity or accuracy of that statement.

Even if the trial court did not disbelieve the admissible uncontradicted evidence in Sullivan's declaration, we conclude it did not establish juror misconduct. Plaintiffs argue three types of misconduct were committed by jurors: (1) refusal to deliberate; (2) failure to follow the law as set out in the jury instructions; and (3) consideration of matters outside the record. There was no admissible evidence demonstrating that any juror refused to deliberate; thus, the first type of misconduct is not established. Regarding the

11.

alleged failure to follow the jury instructions, plaintiffs did not include the bulk of the jury instructions in the record, and have not directed us to any instruction given that the jurors allegedly failed to follow. They assert the jury failed to follow an instruction to base its verdict solely on the evidence at trial, which is addressed in their third allegation of misconduct. They also assert the argument "that the overdose was just an accident, not anybody's fault" disregarded "the [trial] court's instructions related to defendant's admissions."

The verdict form, in the section addressing plaintiffs' overdose claim, stated: "The defendant, … having admitted medical negligence and causation solely in connection with the medication error of February 6, 2009, you must decide how much money will reasonably compensate Vickie Bullard and John Bullard for the harm you find was caused by the medication error." The jury awarded Vickie a total of $43,000 on her claim; it awarded John no damages on his claim for loss of consortium. The jury did not disregard the instructions; it did not find that defendant was not negligent, contrary to defendant's admission and the verdict form's instructions. Rather it awarded damages on the overdose claim as directed.

The extent of damages was the issue to be determined by the jury, and the jury determined the amount of damages to which it found each plaintiff was entitled. The determination was consistent with expert evidence that Vickie did not sustain any long-term or permanent damage as a result of the overdose of medication; it was also consistent with the expert evidence that the overdose did not result in a limitation of her treatment options or require a lengthier treatment with a less effective medication. The denial of damages to John for loss of consortium was supported both by the finding of limited damage to Vickie and the absence of significant evidence that John sustained a loss of consortium or that it was caused by the overdose.[5] Thus, the record does not

---

[5] On John's claim for loss of consortium, the verdict form asked the jury to set an amount "for loss of his wife's love, companionship, comfort, care, assistance, protection, society, moral

12.

support a finding that the jury failed to follow the trial court's instructions about defendant's admissions.

As to the remaining admissible evidence in Sullivan's declaration, plaintiffs contend it established that the jury considered matters outside the record, which amounted to misconduct. "Presentation to or reception by a jury of new evidence from sources outside the trial evidence constitutes misconduct." (*McDonald v. Southern Pacific Transportation Co*. (1999) 71 Cal.App.4th 256, 263.) Additionally, the receipt of information about a party or the case that was not part of the evidence received at trial constitutes jury misconduct. (*People v. Nesler* (1997) 16 Cal.4th 561, 578.) Some courts more broadly state that it is misconduct "to receive any information on the subject of the litigation except in open court and in the manner provided by law." (*Smith v Covell* (1980) 100 Cal.App.3d 947, 952 (*Smith*).)

"'In determining what is proper and what is improper discussion among jurors, regard must be had for the fact that the jury are supposedly men [and women] of different walks of life, avocations, and necessarily views that would be affected by their past experiences and situations. They could hardly arrive at a solution of their differences without discussion of the facts before them, and each man's discussion would necessarily be tinged or affected by his own viewpoint and experience.'" (*Wagner*, *supra*, 112 Cal.App.3d at p. 950.) "'The jury system is fundamentally human, which is both a strength and a weakness.… Jurors are not automatons. They are imbued with human frailties as well as virtues. If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias. To demand theoretical perfection from every

---

support, and enjoyment of sexual relations." John gave no direct testimony about such a loss. When asked how the IV infusions affected his family life, he stated Vickie felt nausea and tiredness all the time and could not handle stress, and it was hard to manage a family of six on a single income, so he worked overtime, which exacerbated his home life because he got home later.

juror during the course of a trial is unrealistic.'" (*Bandana Trading Co., Inc. v. Quality Infusion Care, Inc*. (2008) 164 Cal.App.4th 1440, 1446 (*Bandana*).)

In *Bandana*, an action for breach of a commercial contract, the declaration in support of the defendant's motion for new trial stated Juror No. 2 "'referred to her own expertise in accounting to support her arguments to the jurors,'" referred to an accounting practice called short pay, and asked if the declarant (Juror No. 9), who had an accounting background, was familiar with it. (*Bandana*, *supra*, 164 Cal.App.4th at p. 1445.) The court concluded these statements did not rise to the level of prejudicial misconduct. "Jurors are entitled to rely on their general knowledge and experience in evaluating the evidence. [Citations.] Juror No. 9 provided no evidence that Juror No. 2 decided the case based on extraneous information." (*Id*. at p. 1447.)

In *Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803 (*Iwekaogwu*), an action alleging unlawful discrimination against the plaintiff by his employer, the City, the trial court denied the City's motion for new trial on the ground of jury misconduct. The City presented evidence that one juror "gave emotional descriptions of instances of discrimination he had seen as a reserve police officer." (*Id*. at p. 819.) The court rejected this as a showing of misconduct. "But '[j]urors do not enter deliberations with their personal histories erased, in essence retaining only the experience of the trial itself.' [Citation.] A juror does not commit misconduct merely by describing a personal experience in the course of deliberations. [Citation.] There is no evidence that any juror decided the case based on the juror's description of his own experiences rather than on the basis of the evidence presented at trial." (*Ibid*.)

In *English v. Lin* (1994) 26 Cal.App.4th 1358 (*English*), the plaintiff contended the injury caused by the defendant prevented him from playing football, attending college on a football scholarship, and going on to become a commercial artist. (*Id*. at pp. 1362–1363.) The defendant's motion for new trial was supported by a declaration from Juror Larsen stating that, during deliberations, Juror Foster said he had a relative who was a

14.

commercial artist and reported the relative's starting salary and current salary for that job. (*Id*. at p. 1363.) The declarant stated the jury discussed the plaintiff's loss of earnings and "'[t]he verdict amount included money for loss of earnings and earning capacity based upon the figures presented by Mr. Foster.'" (*Ibid*.) The court found insufficient evidence of juror misconduct. It found the declaration lacked specificity about the circumstances under which Juror Foster's statements were made. (*Id*. at p. 1365.)

> "Because of the lack of a specific context for Foster's statements, the trial court reasonably could have concluded that the declaration was insufficient to show that Foster's remarks were intended by him, or interpreted by other jurors, as additional evidence to consider in this case, as opposed to an explanation as to Foster's reasoning processes—i.e., why Foster believed or disbelieved certain witnesses or believed an award of damages would be appropriate or inappropriate or too low or too high. We also conclude that Larsen's declaration lacks sufficient specificity to show the nature and extent of any open discussion about the subject of the plaintiff's loss of earning capacity, and whether any of the jurors deemed Foster's statements to constitute evidence on this point. Moreover, nothing in his declaration establishes any agreement, express or implied, to consider Foster's statements as evidence. In other words, the trial court reasonably could have concluded that the declaration was insufficient to establish that the jury violated the instruction to 'decide all questions of fact in this case from the evidence received in this trial and not from any other source,' and that the jurors 'must not make any independent investigation of the facts or the law or consider or discuss facts as to which there is no evidence.'" (*English*, *supra*, 26 Cal.App.4th at pp. 1365–1366.)

The court also determined the trial court could reasonably have rejected the declarant's statement that "'[t]he verdict amount included money for loss of earnings and earning capacity based upon the figures presented by Mr. Foster'" as inadmissible evidence of the mental processes of the jury. (*English*, *supra*, 26 Cal.App.4th at p. 1366.)

In *Smith*, an action arising out of an automobile accident, Mrs. Smith complained about pain in her neck, shoulders and arms the day after the accident. She did not complain of lower back pain until six weeks later. (*Smith, supra,* 100 Cal.App.3d at p. 951.) The jury awarded Mrs. Smith $10,000, but awarded Mr. Smith nothing for his

15.

loss of consortium claim. (*Ibid.*) The plaintiffs moved for a new trial, asserting a number of acts of juror misconduct. (*Id.* at p. 952.) The plaintiffs submitted the declarations of two jurors, who stated that, in jury discussions regarding whether Mrs. Smith should have complained of lower back pain shortly after the accident, Juror Cox, who had a back condition aggravated by an injury, told the other jurors that, when his back went out, it hurt right away. (*Ibid.*) There were no contradictory declarations. The court concluded the declarations demonstrated jury misconduct, referring to Cox's statements as "his 'evidence' observations." (*Id.* at p. 953.) The court noted the medical testimony was in sharp conflict, and "[t]he 'evidence' that Cox's back hurt him immediately when it went out tended to support the defense doctors' conclusions" that the automobile accident did not cause Mrs. Smith's lower back injury because she did not complain of it right away. (*Id.* at p. 954.)

Sullivan's declaration characterizes the jurors' comments about the tummy tuck and breast enhancement (as well as the contradicted comments about insanity, Munchausen's syndrome, and deliberate line infections) as arguments. Thus, it appears even the declarant recognized that the jurors did not intend these comments as assertions of fact, to be relied upon as additional evidence on which to base a verdict. Rather, the comments reflected the jurors' reasoning process; they represented the particular jurors' opinions or interpretations of the evidence in light of their own experiences, and explained the jurors' opinions about what the jury's verdict should be. The Sullivan declaration contains no evidence any of the comments were considered by any juror as additional evidence, to be used along with the evidence presented in the courtroom in reaching a decision.

Further, the argument that, without the tummy tuck, Vickie could have been cured of Valley Fever was not a matter outside the evidence. Plaintiffs argue there was no evidence that, but for the tummy tuck, the Valley Fever could have been cured. There was conflicting expert evidence about the best medication to use to treat Vickie's Valley

Fever. Vickie was treated with oral fluconazole when she was first diagnosed with Valley Fever in 2002. After that treatment, she was in good health until 2006. Experts presented by both parties agreed that, because of the gastric bypass surgery, Vickie could not be treated with oral fluconazole in 2009 because her body was unable to absorb enough of the medication to be therapeutic. As a result, she had to be treated by IV infusion. There was disagreement among the experts regarding whether Vickie would have been treated with infusions of fluconazole even in the absence of the overdose, because amphotericin b was reserved for those who were more seriously ill than Vickie, or whether she could have been treated with infusions of amphotericin b for a shorter period in the absence of the overdose, but because of the overdose, treatment with amphotericin b was inadvisable due to the increased risk of damage to her kidneys, so fluconazole had to be used for a more extended period. Additionally, although some of the expert witnesses were reluctant to use the word "cured" in reference to Valley Fever, because the organism remains in the body even when it is held in check by the body's immunological control, there was testimony the disease could go into a "comfortable state of remission" and not recur.

Thus, the discussion of "curing" Valley Fever and the effect of the gastric bypass surgery was not a presentation or discussion of matters outside the evidence presented at trial. It reflected the jurors' interpretation of the evidence presented at trial and their reasoning process. At worst, it suggested an error in the jurors' mental process—confusion, misunderstanding, or misinterpretation of the evidence presented—which does not constitute juror misconduct. (See *English*, *supra*, 26 Cal.App.4th at p. 1367.)

The last admissible piece of evidence in the Sullivan declaration was the statement that "Juror #8 told how differently his wife does her infusions." Although Sullivan did not describe this as an argument, it was presented as part of the same discussion in which some of the other "arguments" were made. As stated in *Iwekaogwu*, "[a] juror does not commit misconduct merely by describing a personal experience in the course of

17.

deliberations." (*Iwekaogwu, supra*, 75 Cal.App.4th at p. 819.) There is no admissible evidence to show Juror No. 8's statement was offered or intended to be considered as substantive evidence, rather than as an explanation of the juror's reasoning on the point under discussion. There is no admissible evidence any juror relied on this as evidence or made any decision based on it. Further, the information did not support or contradict any expert testimony.

Like the juror's reference to her accounting experience in *Bandana*, the juror's description of discrimination he had encountered as a reserve police officer in *Iwekaogwu*, and the juror's disclosure of his relative's salary in *English*, the matters contained in Sullivan's declaration reflected the jurors' discussion of the evidence in the context of their own general knowledge and experience. Unlike the juror's information regarding his back injury in *Smith*, the jurors' comments here did not directly support or contradict any expert testimony presented at trial, nor was there any basis for assuming they were treated by the jury as evidence.

Presuming, as we must, that the trial court resolved conflicts in the evidence in favor of the prevailing party (*Shamblin, supra,* 44 Cal.3d at p. 479.), the trial court, in entering its order denying the motion for new trial, impliedly found the evidence presented by plaintiffs was insufficient to establish juror misconduct. When the issue on appeal turns on a failure of proof in the trial court, the question for the reviewing court is whether the evidence compels a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570–571; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) The admissible evidence plaintiffs submitted in support of their motion does not compel a finding of juror misconduct as a matter of law. The trial court could have rejected all of plaintiffs' proffered evidence, including the statements that were not directly contradicted, as lacking in credibility. Alternatively, it could have rejected the contradicted evidence and determined the uncontradicted evidence in the Sullivan declaration was insufficient to establish any juror misconduct. Either way, the admissible

evidence does not compel a finding that the alleged conduct amounted to juror misconduct.

Because the trial court's order may be upheld on the ground plaintiffs did not carry their burden of demonstrating juror misconduct, we need not address the question whether the alleged juror misconduct was prejudicial.

## *DISPOSITION*

The order denying plaintiffs' motion for new trial is affirmed.  Defendant is entitled to its costs on appeal.

_____
HILL, P.J.

WE CONCUR:


_____
KANE, J.


_____
POOCHIGIAN, J.

19.