Filed 9/4/20  Marinovic v. Serrano CA4/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TANJA MARINOVIC, | |
| Plaintiff and Appellant, | E070214 |
| v. | (Super.Ct.No. RIC1508401) |
| JOSHUA DAVID SERRANO et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Irma P. Asberry, Judge.  Affirmed.

Carpenter, Zuckerman & Rowley, Steven K. McElroy, and Joshua M. Dowell for Plaintiff and Appellant.

Law Office of Cleidin Z. Atanous and Cleidin Z. Atanous for Defendants and Respondents.

Plaintiff and appellant Tanja Marinovic was involved in a motor vehicle accident.  Defendant and respondent Joshua David Serrano was driving the pickup truck that rear-ended Marinovic's rented minivan.  Defendant and respondent David Maguin is

1

Serrano's employer and the owner of the company truck Serrano was driving. Marinovic brought suit, seeking damages for her injuries. Serrano and Maguin accepted fault for the accident, but contested whether the accident was as serious as Marinovic claimed, and whether her medical expenses were reasonably necessary and caused by the accident. The jury awarded Marinovic $35,000 in damages for past economic loss, $10,000 for past noneconomic loss, and no future damages, substantially less than the seven-figure verdict she had sought.

Marinovic argues here that the trial court erred by (1) denying her motion to remove two jurors for misconduct; (2) excluding certain evidence in support of her noneconomic damages claim; (3) denying her motion for a mistrial based on the conduct of defense counsel; and (4) denying her motion for a new trial. We find no error and affirm the judgment.

## I. BACKGROUND

On July 19, 2013, Serrano was driving his employer's truck when he rear-ended a rented minivan, in which Marinovic was the front seat passenger. Marinovic's husband was driving and her two children and her parents were in the vehicle, but only Marinovic's claims went to trial and are at issue in this appeal.

At trial, the defense conceded fault for the accident. The parties presented competing evidence regarding the collision's severity and the severity and cause of Marinovic's alleged injuries. Marinovic argued that the jury should award her more than $7 million. Defense counsel proposed an award of zero dollars. In the alternative,

2

defense counsel suggested that if the jury wanted "to be generous" it could award $94,950 for past economic damages—an amount the parties had stipulated to represent the total cost of Marinovic's potentially recoverable past medical expenses—plus an equal amount representing past noneconomic damages.

The jury awarded Marinovic $35,000 in damages for past economic loss, $10,000 for past noneconomic loss, and no future damages. Marinovic moved for a new trial on several grounds, discussed below. The trial court denied the motion.

## II. DISCUSSION

A. *Award of Past Economic Damages*

The theme throughout Marinovic's briefing is that the jury's $35,000 award for past economic damages was contrary to the evidence. She contends that this is so because "there was a stipulation to $94,950 [in such damages], the defense lawyer told the jury to award that amount, and there was no evidence at trial regarding the costs of any treatment that would allow the jury to reduce the amount." Marinovic's characterization of the record is inaccurate, and the conclusion she draws is incorrect.

First, the parties did not reach a stipulation that Marinovich had suffered any particular amount of past economic damages—or, more specifically, that she incurred any particular amount of reasonable medical expenses—as a result of the accident. The stipulation that the parties put on the record was the following: "[T]he reasonable cost of Plaintiff's past medical expenses is $94,950. The stipulation only pertains to medical expenses. It does not pertain to the reasonably necessary medical care or causation of

3

any medical care." Thus, the parties stipulated that Marinovich had incurred $94,950 in *potentially* recoverable medical expenses The parties did *not* stipulate that those medical expenses were in fact reasonably necessary, or that the accident caused the conditions allegedly necessitating medical treatment. In other words, the parties stipulated that the maximum amount the jury could have awarded Marinovich for her past medical expenses was $94,950, but nothing precluded it from awarding less than that amount.

Second, Marinovic's assertion that "the defense lawyer told the jury" to award her $94,950 in past economic damages is false. During closing argument, defense counsel encouraged the jury to award Marinovic nothing at all: defense counsel pointed out to the jury the spaces on the verdict form for entry of different categories of damages, and stated, "Let me be perfectly clear. . . . It's perfectly acceptable to put a zero." In the alternative, defense counsel noted the parties' stipulation regarding medical expenses, and suggested that the jury could award $94,950 for past economic damages on that basis "if you want to be generous." Defense counsel noted, however, that $94,950 included "everything," including some treatments that the defense contended were unnecessary and some alleged injuries that the defense contended were either not caused by the accident or were simply nonexistent.[1] Defense counsel thereby contended that an award

---

[1] Defense counsel's comments were as follows:

"What should the plaintiff be awarded in this case? I have a problem with—with the knee surgery and the shoulder surgery. Was it reasonably necessary? It didn't do anything for her, yet Dr. Rose came and gave her that.[¶] So, ladies and gentlemen, if you want to be fair, we agreed to a number of $94,950 for past economic loss. That

4

of zero damages was appropriate, but that a *maximum* of $94,950 in past economic damages could be supported by the evidence, even if the jury accepted Marinovic's arguments regarding the reasonableness and causation.

Finally, we are unpersuaded by Marinovic's contention that there was no evidentiary basis for the jury to award less than $94,950 for past economic damages. As noted, the parties disputed whether Marinovic's medical expenses were all reasonably necessary, whether her alleged injuries were as serious as she claimed, and whether those injuries were caused by the accident. The parties presented a classic battle of the experts on those issues. For example, among Marinovic's claimed injuries was a labral tear and rotator cuff tear in her right shoulder. One of Marinovic's experts attributed these injuries to the trauma of the accident. Another of Marinovic's experts testified that she required a second surgery on her rotator cuff, which the first expert either failed to repair or did not adequately repair. A defense expert, on the other hand, found no evidence of traumatic injury in images of Marinovic's shoulder, only some degenerative changes. Another defense expert agreed with Marinovic that she had injured her shoulder in the accident, but opined that the first surgery had resolved the issues. The second defense

---

includes the back. That includes everything. So if you want to be generous, you can give her that amount of money."

These comments by defense counsel were carelessly phrased, in that they do not reflect with complete accuracy the parties' stipulation, as it was placed on the record; $94,950 represented a stipulated amount of medical costs incurred, not the broader category of "past economic loss." The jury was provided, however, with the exact language of the parties' stipulation. And the jury was repeatedly instructed that comments and argument by attorneys are not evidence, and that it must follow the law as the court instructs.

5

expert found Marinovic's complaints about ongoing pain and limited range of motion to be inconsistent with his observations of her shoulder's strength and range of motion.

Marinovic has cited no authority in support of her suggestion that, in the absence of evidence of the itemized cost of each individual treatment, the jury had no discretion to award less than the entire $94,950 in past medical expenses that she sought, and we are aware of none. The jury reasonably could have, and apparently did, conclude that some, but not all, of Marinovic's past medical expenses were reasonably necessary and caused by the accident, and awarded Marinovic a sum that reflected that conclusion. We conclude that the jury's award of $35,000 in past economic damages does not, by itself, indicate that Marinovic's trial was unfair in any respect.

B. *Juror Misconduct*

Marinovic argues that the trial court erred by failing to dismiss two jurors, Jurors 3 and 5, for misconduct during the trial. The trial court did dismiss another juror, Juror 4, because she had not disclosed her familiarity with one of the defense's experts. We find no error in the trial court's rulings.

1. *Additional Background*

After the close of evidence, but before closing arguments, Marinovic's counsel raised an issue of possible juror misconduct.[2] Counsel observed that Jurors 3 and 5 had been communicating with each other verbally and nonverbally during trial. Juror 4,

---

[2] Marinovic's counsel's concern was first expressed to the court off the record, after the end of proceedings the previous evening.

6

sitting between them, seemed to have been "caught up in it," paying attention to the interactions of Jurors 3 and 5. Counsel expressed "concern" that Jurors 3 and 5 had been "discussing this case, at least to the extent where they foresee certain things coming, and then when that testimony or evidence happens . . . they react together at the same time . . . ." The trial court and defense counsel both expressed that they had not observed such conduct, though defense counsel observed, and the trial court concurred, that it seemed to be a "very happy" jury, and jurors seemed "very friendly" with one another. The trial court agreed to "inquire of the three jurors about their interactions."

Juror 3 denied having spoken to other jurors about the case, either outside the courtroom or while in the courtroom. She acknowledged that she had "formed a particular bond" with "three or four" other jurors, including Juror 4 and the two jurors who sat in front of her. She admitted that on one or two occasions, outside the courtroom, she and Juror 4 had spoken to one another about the attorneys for both sides, specifically, about their tendency to repeat "the same question over and over." Juror 5 may also have participated in those discussions. The discussions were brief, and limited in scope: "It's just been, like, discussing, like, to move on to the next question." Juror 3 admitted to sometimes giggling or laughing in court out of frustration with the attorneys' tendency to repeat questions. She had also overheard Juror 4 make "snarks" like "Oh, gosh" in reaction to some witnesses and the attorneys. She had not responded to Juror 4's remarks, or observed other jurors responding. Juror 3 denied that she had anything

7

against either attorney, or that anything that happened that caused her to feel she could not be fair to both sides.

Juror 4 stated that, on the previous day, she had mentioned to Juror 3 that she just realized that she was familiar with one of the defense's expert witnesses. She did not know the expert personally, but she knew him by name because two of her coworkers had gone to him for treatment, and had mentioned his name in passing as they left work for medical appointments. She had not heard anything more, either positive or negative, about the expert or her coworkers' experiences being treated by the expert. She admitted to muttering to herself on occasion during trial—"thinking out loud"—but stated that it was an unintentional habit, and that she had not intended to be heard by any of the other jurors.

Juror 5 denied discussing the case with any of the other jurors or overhearing such conversations between other jurors, including anything about the pace of the trial or anything either of the attorneys had done. She denied having formed any particular bond or friendship with any of the other jurors. She denied that anything that happened in the courtroom had caused her to laugh or talk out loud. She said that she would often have lunch with Juror 4 or the juror who sat in front of her, but that they did not speak about the case at all. Juror 5 said that Juror 4 had not mentioned anything to her about knowing any party or witness.

Marinovic's counsel asked that Jurors 4 and 5 be dismissed for cause, arguing that Juror 4 had concealed knowing the defense expert during voir dire, and that Juror 5 had

8

"outright lied" about laughing and reacting audibly in court.  Marinovic's counsel stated that he didn't "know quite what to think about Juror 3," and did not expressly ask that she be dismissed.  Defense counsel argued that none of the three jurors should be dismissed.

The trial court ruled that Juror 4 would be dismissed because of her previously undisclosed familiarity with the defense expert, but declined to dismiss Jurors 3 or 5.  The trial court observed that Juror 3's frustration with the attorneys was likely shared by all the jurors.  That frustration, moreover, was directed equally at both sides, and Juror 3 had not expressed any opinions about or otherwise discussed the issues involved in the case.  The trial court therefore accepted Juror 3's assertion that she could be fair to both sides.  Regarding Juror 5, the trial court found that, "although others have said there have been . . . some giggles or whatever in the courtroom, Juror No. 5 really has not participated in that.  She hasn't said things to others and others haven't reported that she's said necessarily things to them."  The trial court found credible Juror 5's statements that nothing had occurred that caused her to feel that she could not be fair.

2. *Analysis*

On review from a trial court's determination of whether juror misconduct occurred, "'"[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence."'" (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345.)  "Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination." (*People v. Nesler* (1997) 16 Cal.4th 561, 582.)

Marinovic has not adequately preserved for appellate review a claim that the trial court erred by allowing Juror 3 to remain on the jury. Marinovic's counsel asked that the trial court inquire into possible misconduct based on counsel's observations of the behavior of Jurors 3, 4, and 5. Nevertheless, after that inquiry was conducted, counsel expressly requested only that Jurors 4 and 5 be dismissed from the case. Counsel made only equivocal remarks about Juror 3, and never asked that she be removed from the jury. On this record, if the trial court had struck Juror 3, Marinovic could just as well claim that was error.

In any case, however, we conclude that Marinovic has not demonstrated that either Jurors 3 and 5 should have been dismissed for misconduct. The trial court found that Juror 5 had not participated in any inappropriate discussions or other behavior inside or outside of the courtroom. That finding was supported by substantial evidence—Juror 5's own on-the-record statements, among other things—even if other evidence might have supported a different conclusion. (See, e.g., *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 ["Our authority begins and ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of [the trial court's finding]"].)

Similarly, there was substantial evidence to support the trial court's conclusion that, although Juror 3 inappropriately discussed what she perceived to be a repetitive style of questioning by the attorneys with at least one other juror, those discussions did not extend to the issues involved in the case, and the jurors' frustrations with the flow of the

10

case were directed at both sides equally. Although Juror 4 said that she mentioned to Juror 3 that she had realized she was familiar with the defense's expert, and Juror 3 did not report any such conversation to the court, that does not mean Juror 3 was lying; for example, she might not have heard or understood Juror 4's comment. The trial court found credible Juror 3's assertion that any comments or other reactions to evidence that she overheard Juror 4 make had no effect on her ability to be fair to both sides in the case, and there is no appropriate basis for us to disturb that determination. We agree with the trial court's assessment that, to the extent Juror 3 engaged in any misconduct, that misconduct was not prejudicial.

Marinovic contends that the record compels the conclusion that there was misconduct at least by Juror 4, and that this misconduct (as well as that of Juror 3) must have been prejudicial, despite Juror 4's removal from the jury before deliberations, because the jury's final verdict awarded her only $35,000 for past economic damages, below the minimum she contends was appropriate. As discussed above, however, nothing about the verdict itself is incompatible with the evidence and argument presented by the parties.

The trial court did not err by declining to remove Jurors 3 and 5 from the jury, and did not err in determining that Marinovic had failed to demonstrate any prejudicial juror misconduct.

11

B. *Exclusion of Evidence of Noneconomic Damages*

Marinovic contends that the trial court abused its discretion by unreasonably restricting her presentation of evidence of noneconomic damages. Specifically, Marinovic suggests that she was only able to present limited evidence of the happy and full life that she was leading before the accident, so as to make a sharp contrast with her limitations and suffering after the accident. We are not persuaded.

A trial court's determinations as to the admissibility of evidence in general and to exclusion under Evidence Code section 352 are reviewed for abuse of discretion. (*People v. Lee* (2011) 51 Cal.4th 620, 643) A trial court's discretionary ruling will be disturbed on appeal only upon a clear showing of abuse and a miscarriage of justice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

Marinovic was not generally precluded from presenting evidence of her life before the accident. Rather, the purported restriction on her presentation of evidence was the cumulative effect of sustained objections to individual questions. Thus, in briefing on appeal, citing to a range of pages in the recorder's transcript, she complains that "[a]ll the jury got to hear and see were a few snippets of plaintiff in between numerous relevance objections." She makes no attempt, however, to show that any particular ruling by the trial court within the cited page range was incorrect. "'Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error.'" (*People v. Foss* (2007)

155 Cal.App.4th 113, 126.)   Marinovic has not carried that burden, as she failed to point us to a ruling that was arguably an abuse of discretion.

Moreover, our review of the portions of the record cited by Marinovic does not reveal any unreasonable restriction on her presentation of evidence, either directly stated or emanating from a series of sustained objections.  For example, the trial court properly sustained a relevance objection to the following question asked of Marinovic:  "So growing up, what types of activities did you enjoy?  What made your life enjoyable?"  With differently framed questions, however, counsel was permitted to explore at some length Marinovic's longstanding love of watching and participating in sports, and the role that sports and other physical activity played in her personal, family, and work life before the accident.  Marinovic was permitted to testify without restriction—indeed, without objection by the defense—in response to the question "And what sort of activities gave you joy – made your life enjoyable" in the "span of time just before 2013," when the accident occurred.

Marinovic has demonstrated no abuse of the trial court's discretion with respect to her presentation of evidence in support of her claim of noneconomic damages.

C. *Motion for Mistrial*

1. *Additional Background*

Before trial, Marinovic sought an order precluding any mention of the circumstance that the other five people in Marinovic's vehicle during the accident had

settled their claims and been dismissed from the lawsuit. The trial court granted the motion, subject to "revisiting" the issue "if something comes up that makes it germane."

During opening statements, Marinovic's counsel told the jury that, although no one left the scene of the accident in an ambulance, other passengers in the vehicle were injured, including Marinovic's mother, who was taken for emergency treatment on the night of the accident, "being the most significantly outwardly injured." After the opening, the defense moved for a mistrial on the basis of counsel's statements about the injuries of other passengers, but the motion was denied.

During direct examination, Marinovic's husband mentioned that his mother-in-law was injured during the accident, specifying that she had fractured her shoulder.[3] Then, on cross-examination of Marinovic's husband, there was the following exchange:

"[Defense counsel]: This morning you mentioned that it was your mother-in-law who was in the car who suffered a broken arm.

"[Marinovich's Husband]: Yes.

"[Defense counsel]: And she filed a lawsuit as a result of this accident that settled; correct?

"[Plaintiff's counsel]: Objection. Relevance and it violates a court order.

"[Defense counsel]: No, it doesn't.

---

[3] The reporter's transcript shows that the defense objected on the basis of relevance to the question that elicited this information, and that the trial court sustained the objection, but not until after Marinovic's husband had already answered the question. There was no motion to strike the testimony.

14

"The Court: Sustained.

"[Defense counsel]: Isn't it true that your mother-in-law settled in this case?

"[Plaintiff's counsel]: Objection, your Honor. That's not relevant to any issue in this case.

"The Court: Sustained."

Counsel for the parties and the trial court then had a discussion out of the presence of the jury. Defense counsel contended that Marinovic had opened the door to questioning about the mother-in-law's settlement by eliciting testimony about her broken shoulder. Plaintiff's counsel argued that testimony about other passengers' injuries was different from testimony that they had asserted claims or received settlements, and requested that the trial court admonish defense counsel in the presence of the jury. The trial court found no reason to change its previous rulings excluding evidence of the other passengers' settled claims. It did not, however, choose to admonish defense counsel in front of the jury, instead instructing defense counsel out of the presence of the jury to "go on to the next area."

The next day, Marinovic moved for a mistrial on the ground that defense counsel's improper questions regarding Marinovic's mother's settlement of her claims arising from the accident had caused incurable prejudice. The trial court denied the motion.

15

2. *Analysis*

"The fundamental idea of a mistrial is that some error has occurred which is too serious to be corrected, and therefore the trial must be terminated, so that proceedings can begin again." (*Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 678.) "[T]he trial judge, present on the scene, is obviously the best judge of whether any error was so prejudicial to one of the parties as to warrant scrapping proceedings up to that point. (*Ibid.*) "'A trial court should *grant* a mistrial *only* when a party's chances of receiving a fair trial have been irreparably damaged, and we use the deferential abuse of discretion standard to review a trial court ruling *denying* a mistrial.'" (*Id.* at p. 679.)

The trial court reasonably determined that the attorney misconduct here was not so extreme as to irreparably damage Marinovic's chances of receiving a fair trial. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1412 ["Attorney misconduct is incurable only in extreme cases."]; *People v. Hill* (1998) 17 Cal.4th 800, 846 ("constant and outrageous" misconduct of prosecutor "may very well be sufficient of itself to require reversal . . . .".) In light of the previous order excluding such evidence, it was inappropriate for defense counsel to inquire about Marinovic's mother's settlement of her claims without first "revisiting" the issue with the trial court out of the presence of the jury. Nevertheless, the trial court promptly sustained objections, so the witness did not provide any answer to the inappropriate questions. As the trial court noted, the jury had been "admonished multiple times that the questions of the attorneys are not evidence." The questions themselves did not suggest what the terms of any settlement might have

16

been.  Defense counsel complied with the trial court's instruction to "go on" to other areas of questioning, and did not thereafter repeat the misconduct.  Moreover, the experience of at least some members of the jury likely would make it aware, even absent the inappropriate questions, that others injured in the accident likely had separate, perhaps resolved, legal claims of their own.

We find nothing in the record compelling the conclusion that Marinovic's chances for a fair trial were irreversibly damaged by defense counsel's inappropriate questions.  To the contrary, we find it unlikely that those questions left any impression on the jury at all.  (See *Tingley v. Times Mirror Co.* (1907) 151 Cal.1, 23 [finding counsel's remarks improper, but "still these remarks did not constitute that degree of impropriety that its effect must have been so indelibly impressed on the minds of the jury that the instruction of the court to disregard them was ineffectual"].)  The trial court therefore did not exceed the bounds of its discretion by denying Marinovic's motion for a mistrial.

D. *Motion for New Trial*

Marinovic contends that the trial court erred in denying her motion for new trial because (1) the jury's award of past economic damages was contrary to the evidence; (2) jury misconduct rendered the trial unfair; (3) defense counsel's misconduct rendered the trial unfair; and (4) she was unfairly limited in putting on evidence of her noneconomic damages.  We have rejected each of these contentions above.  For the same reasons, Marinovic has not demonstrated that her new trial motion should have been granted.

## III. DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
                                                                              J.

We concur:

MILLER_____
                    Acting P. J.


SLOUGH_____
                    J.

18