Filed 8/7/23  S.W. v. J.W. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| S.W., | D080558 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 22FDV01411N) |
| J.W., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Matthew Brower, Judge.  Affirmed.

J.W., in pro. per., for Appellant.

No appearance for Respondent.

J.W. appeals in propria persona from orders granting his estranged wife S.W.'s request for a five-year domestic violence restraining order (DVRO), awarding physical and legal custody of their daughter L.W. to S.W., and denying J.W. visitation rights.  We find no error and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Requests for DVRO and Child Custody and Visitation Orders*

On March 19, 2022, S.W. filed requests for a DVRO against J.W. and for orders granting her legal and physical custody of their daughter L.W. and denying J.W. visitation rights.

In support, S.W. submitted a declaration stating that she and J.W. had been in a relationship for four years and married for one year, and they had a three-month old daughter, L.W. According to S.W., on March 12, 2022, during an argument over finances, J.W. ripped her phone out of her hand, threw it across the room, grabbed her several times, then dragged her into the bathroom while she was holding their baby. He strangled her from behind and muffled her screams by covering her mouth with his hand. S.W. was having trouble breathing and started losing her hold on L.W. She slipped down and eventually managed to place L.W. gently on the floor. J.W. pulled S.W. up and continued strangling her. At one point, he stuffed a sock in her mouth to stop her from screaming. J.W. finally released her and returned her phone after she pried a towel bar off the wall and started waving it at him.

S.W. called 911, but J.W. left before the police arrived. The police were able to locate and arrest J.W. using the "Find My iPhone" application on S.W.'s phone. J.W.'s military command forced him to move into the barracks and issued an informal "no contact" order.

According to S.W., there had been other prior incidents of physical violence. Around the time when the pandemic started in 2020, J.W. got mad and pushed her. After that, there were at least five incidents when J.W. pushed or grabbed her during arguments.

There were several other incidents of violence after their daughter was born. About two weeks after the baby's birth, J.W. ripped the baby out of S.W.'s arms and kicked S.W. in the stomach. S.W. had to go to the emergency room with severe abdominal pain the next day. Around February 27, 2022, J.W. again ripped the baby out of S.W.'s arms and took her phone away to prevent her from calling for help. Once when S.W. confronted J.W. about something by text, he sent a text threatening to "body slam" or harm her in some way. There were other times when J.W. ripped the baby out of S.W.'s arms while the baby was crying to be fed and grabbed or pushed S.W. during arguments.

S.W. also asserted that J.W. had been following her on the night of March 28, 2022.

S.W. submitted exhibits including a screenshot of a text exchange between her and J.W. in which she asked if they were going to have a conversation when he got home. J.W. responded, "I don't want to honestly bc it's gonna get bad. . . . I don't wanna end up body slamming you n shit so no." S.W. also submitted screen shots from her "Find My iPhone" application purportedly showing that J.W. was following her on the evening of March 28, 2022, and a report from the Oceanside Police Department after she reported the incident. She also submitted a medical record from her trip to the emergency room after J.W. purportedly kicked her in the stomach and two photos of the bruises she allegedly sustained in the incident of March 12, 2022.

B. *Response to DVRO Request*

After the trial court issued a temporary DVRO and set a hearing on the matter, J.W. submitted a response to the DVRO request, but no sworn declaration. In his response, J.W. asserted that: (1) S.W. had requested a

3

military protective order against him, but it was denied; (2) no criminal charges had been filed against him; (3) the allegation that he kicked S.W. in the stomach was false and not supported by the medical records; (4) the allegations that he strangled, abused, and stalked S.W. were false; and (5) S.W. once drove a vehicle while intoxicated; she suffered from psychological problems; and their daughter had suffered a concussion while in S.W.'s care.

J.W. submitted exhibits including a March 21, 2022 document from the District Attorney for the County of San Diego stating that no formal charges had been filed against him. He also submitted an undated text exchange about S.W. purportedly driving while intoxicated and undated messages purportedly showing that S.W. was suicidal or had mental health problems.

C. *Hearing and Ruling*

The trial court held a hearing on S.W.'s requests on April 19, 2022. There was no court reporter present. The minute order for the hearing indicates that S.W. and J.W. were both sworn and examined and S.W. provided "numerous photographs of her injuries." The minute order further states: "The Court having considered the testimony of the parties and the evidence presented, finds that Petitioner has sustained her burden of proof. [¶] Petitioner's request for restraining order is granted for a period of 5 years, and will expire on 4/18/2027."

The court issued a formal order after hearing granting the five-year DVRO against J.W. and naming L.W. as an additional protected person. The court also issued an order granting legal and physical custody of L.W. to S.W. with no visitation to J.W.

4

D. *Settled Statement*

J.W. filed a notice of appeal and requested a settled statement of the unreported hearing of April 19, 2022 under rule 8.137 of the California Rules of Court. In his proposed settled statement, J.W. described S.W.'s testimony at the hearing as follows: "Petitioner stated that she was strangled, kicked in the stomach, and dragged into a bathroom while holding [L.W.] (minor child) in her arms. Petitioner presented to the court alleged photographs of bruising on her neck and forearms, and cut on her finger, allegedly caused by Respondent after the parties had gotten into a physical altercation. Petitioner also stated that she was in fear of being stalked by Respondent. Petitioner stated that Respondent left their apartment after the alleged violence, and Petitioner called police to find Respondent, who was arrested and taken to jail. [¶] The Judge asked Petitioner to show pictures that she had brought into the court, and inquired in to her telling her side of the story."

J.W.'s proposed settled statement also described his own testimony at the hearing as follows: "Respondent stated that Petitioner was denied a protective order based on her allegations, and that the District Attorney had not filed any formal charges against Respondent based on the evidence presented to the District Attorney by Petitioner. [¶] Respondent further stated that he and Petitioner had gotten into a verbal altercation, which escalated into a tussle over car keys after Petitioner (not Respondent), became physically aggressive, in her effort to try to stop Respondent from leaving her in the apartment, and Respondent grabbed Petitioner's arms to try to prevent Petitioner from fighting him. [¶] Respondent generally denied all acts of violence. [¶] Respondent provided evidence of Petitioner's controlling nature of the relationship, including Petitioner's suicidal and

5

mental instabilities respective of their relationship. [¶] Respondent stated that Petitioner had stalked his every whereabouts during the marriage (without his knowledge), by Petitioner using the 'find my I-phone [*sic*] app,' as a human tracking device."

The trial court declined to adopt J.W.'s proposed settled statement, and instead issued its own modified settled statement. The modified settled statement stated in relevant part: "The Court is unable to recall the details of the parties' testimony in this case and defers to the description in the minute order of April 19, 2022. [¶] . . . [¶] After having reviewed the respective declarations of both parties, hearing their respective testimony and reviewing the exhibits, the Court determined the Petitioner met her burden of proof to establish a violation of the California Domestic Violence Prevention Act. This determination by the court was based upon the Court's assessment of the Petitioner's credibility supported by admitted corroborating photographs of her injuries after having also taken into consideration the case presented by the Respondent. [¶] In light of the Court's findings regarding substantiated domestic violence, the court granted Petitioner sole legal and physical custody of the minor child, ordered no visitation for Respondent, and directed Respondent to file a request for order for child custody and visitation should he desire any modification."

DISCUSSION

I

J.W. argues that there is no substantial evidence to support the trial court's findings of abuse or domestic violence. (See Fam. Code, § 6203 [defining "abuse"]; § 6211 [defining "domestic violence" to include abuse perpetrated against a spouse]; § 6300 [authorizing DVRO based on proof of past abuse].) He also contends that the evidence S.W. presented was not

6

sufficient to justify the interference with his Fourteenth Amendment liberty interest in the care and companionship of his child.  We disagree.

As an initial matter, J.W. has failed to produce an adequate appellate record for us to assess these sufficiency of evidence issues.  At the hearing of April 19, 2022, S.W. and J.W. both testified under oath and S.W. provided "numerous photographs of her injuries."  Yet there is no reporter's transcript of the hearing because it was unreported, and there are only two photographs of S.W.'s injuries in the appellate record.  According to the settled statement, the trial court was "unable to recall the details of the parties' testimony in this case."  Thus, we do not have an adequate record of the testimony and evidence presented at the hearing.  Because it was J.W.'s burden on appeal to supply an adequate record, he has forfeited his sufficiency of evidence arguments.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)

Even if we were to consider these arguments on the merits, however, we would reject them.  S.W. provided a sworn declaration about the incidents of domestic violence, she testified about them at the hearing, and she provided corroborating photographs of her injuries.  With the corroborating photographs, the trial court found S.W.'s testimony to be credible.  Nothing more is required to sustain the trial court's findings of abuse.  If believed by the trial court, the testimony of a single witness is sufficient evidence for a finding of abuse and the issuance of a DVRO.  (See, e.g., *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 517, citing *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823; see also *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of single witness, even the party herself, may be sufficient].)  As an appellate court, "we do not second-guess the calls the trial court made regarding credibility."  (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 349.)

7

Nor did the trial court's orders violate J.W.'s Fourteenth Amendment liberty interest in the care and companionship of his child. This right is fundamental, but not absolute. "Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling interest that a state has not only a right, but a duty, to protect." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.) According to the evidence credited by the trial court, J.W. committed multiple acts of domestic violence against S.W. which also endangered the safety of their young baby, such as strangling S.W. while she was holding the baby, kicking S.W. in the stomach while she was holding the baby, and repeatedly ripping the baby out of S.W.'s arms. In these circumstances, the trial court did not violate J.W.'s constitutional rights by granting the DVRO, granting S.W. physical and legal custody of the child, and denying J.W. visitation for the child's safety and protection.

## II

J.W. also argues that the trial court erred by issuing the DVRO without first conducting a background history search under Family Code section 6306. Section 6306, subdivision (a) requires the court to ensure that a check of available records and databases is conducted to determine if the subject of a proposed DVRO has prior convictions for specified categories of offenses or outstanding warrants, or is currently on parole or probation, has a registered firearm, or has a prior restraining order or violation of a prior restraining order. According to J.W., if the trial court had done so, it would have discovered that he had no prior domestic violence convictions or restraining orders against him.

8

We reject this argument for several reasons. First, there is no indication in the record that J.W. raised this issue in the trial court. Generally, issues not raised in the trial court cannot be raised for the first time on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.) Even assuming that no background check was conducted, the trial court could easily have corrected this omission if J.W. had raised the issue in a timely manner at or before the hearing. Thus, the issue is forfeited.

Second, even if the issue were not forfeited, J.W. has failed to establish that the trial court did not comply with Family Code section 6306. Nothing in the appellate record indicates one way or the other whether there was a background history search conducted before the DVRO hearing. The results of any such search would have been "maintained in a confidential case file" that would "not become part of the public file." (Fam. Code, § 6306, subd. (d).) On appeal, in the absence of any evidence to the contrary, we must presume that the trial court complied with the applicable law. "This is so because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on the appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson, supra*, 5 Cal.5th at pp. 608–609.)

Finally, even assuming any non-forfeited error, J.W. has still failed to demonstrate any prejudice. To establish prejudice, an appellant must demonstrate a reasonable probability that, in the absence of error, a result more favorable to him would have been reached. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 118.) Here, S.W. did not allege that J.W. had previously suffered any prior criminal conviction or restraining order, and the trial court had no reason to believe that he had. In these

9

circumstances, there is no reasonable probability that a records search confirming that J.W. in fact had no prior criminal conviction or restraining order would have made a difference to the result.

III

J.W. further argues that the trial court violated Family Code section 6323, subdivision (a) by purportedly giving no deference to his relationship with L.W. when it granted legal and physical custody to S.W. and no visitation rights for him. This statute provides that when making an order for custody or visitation under this statute, the court "shall consider whether the best interest of the child, based upon the circumstances of the case, requires that . . . visitation or custody shall be suspended *or denied*." (Fam. Code, § 6323, subd. (d), italics added; see also *id*., § 6340, subd. (a)(1) [authorizing court to make orders described in Family Code sections 6320-6327 after notice and hearing].)

Under this provision, a court has discretion to deny a parent visitation or custody if it is in the best interest of the child. According to the trial court's settled statement, it awarded legal and physical custody to S.W. and no visitation for J.W. "[i]n light of the Court's findings regarding substantiated domestic violence . . . ." Moreover, the domestic violence committed by J.W. included strangling S.W. while she had L.W. in her arms on one occasion, kicking her in the stomach while she had L.W. in her arms on another occasion, and repeatedly ripping L.W. out of S.W.'s arms, including while the baby was crying to be fed.

In reviewing custody and visitation orders, we apply the deferential abuse of discretion test. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.) "Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best

interests of the child." (*Ibid.*) Here, the repeated incidents of domestic violence created a risk of harm to L.W. and provided a reasonable basis for the trial court's custody and visitation rulings. Thus, the trial court did not abuse its discretion by awarding legal and physical custody to S.W. and no visitation rights for J.W.

IV

Finally, we deny J.W.'s motions for judicial notice of letters dated March 23, 2023 and June 5, 2023 written by his criminal defense lawyer regarding the status of the separate criminal case apparently arising from S.W.'s allegations of domestic violence. These letters are not a proper subject of judicial notice under Evidence Code sections 452 and 459. They are also irrelevant for two reasons: (1) the trial court's orders must be reviewed based solely on the evidence that was before it at the time they were made (*In re V.M.* (2010) 191 Cal.App.4th 245, 253, fn. 1); and (2) the fact that a jury hung on the criminal charges and J.W. later pled guilty to misdemeanor false imprisonment without a domestic violence allegation has no relevance to the correctness of the trial court's rulings in this DVRO proceeding, because neither the hung jury nor the guilty plea constitutes a finding as to whether J.W. committed abuse or domestic violence against S.W. We do not take judicial notice of irrelevant matters. (*People v. Young* (2005) 34 Cal.4th 1149, 1171, fn. 3 [judicial notice cannot be taken of any matter that is irrelevant].)

## DISPOSITION

The orders of April 19, 2022 are affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.