[Civ. No. 19894.   Second Dist., Div. Three.   July 8, 1954.]

HENRY J. GORDON, Respondent, v. SARAH F. GORDON, Appellant.

A. Brigham Rose for Appellant.

Avery M. Blount and Hunt & McCann for Respondent.

WOOD (Parker), J.—Action to set aside a deed upon the ground that it was procured by duress.   Defendant appeals from judgment in favor of plaintiff.

Plaintiff and defendant were married in 1945, and at that time plaintiff owned certain real property as his separate property.   On March 10, 1947, defendant caused a complaint to be filed by the district attorney charging that plaintiff assaulted defendant on March 8, with a deadly weapon, and that he violated section 273d of the Penal Code (inflicting injury upon wife).   On March 10, defendant was arrested upon said charges and placed in jail.   On March 12, he was released on bond.   His preliminary hearing was set for March 17.

Plaintiff testified that after he was released on bond he returned to his home (the property involved here, where plaintiff and defendant lived); defendant then said to him: "Well, I got you where I want you and you will go down to Rau [an attorney]."; he went to the office of Mr. Rau (on March 13) because defendant told him to go there; the attorney told him that he (plaintiff) was in a mess and that he could get a number of years in San Quentin; plaintiff then asked, "[H]ow do I get out of it?"; the attorney, who then had a joint tenancy deed in front of him (a deed from plaintiff to plaintiff and defendant as joint tenants), said, "Just sign that."; the attorney also said that the charges would be dropped if he signed the deed; he signed the deed believing that the charges would be dropped, and he would not have signed it if he had not so believed; on March 14 he and defendant went to Mr. Rau's office and talked with him regarding a dismissal of the case; the attorney said he would go to the district attorney's office and do the best he could; then the three of them went to the district attorney's office; a man in that office asked defendant if a weapon was used; she and the plaintiff said that no weapon was used; nothing was said at that time about having executed a deed; they went to court on March 17 and Mr. Rau told the court that defendant's tongue was cut by her teeth, and defendant told the court that no weapon was used.

On March 17, at the preliminary examination, defendant testified that plaintiff did not use any weapon and she did not want to prosecute him. Mr. Rau told the court that he believed that no deadly weapon was used, that the mouth injury was due to a lower dental plate that did not fit well, that there was some question about this having occurred, and that he moved that the case be dismissed.

The case was dismissed. On several occasions thereafter, according to plaintiff's testimony, defendant told him that she could open the case at any time and have him put away. In October, 1947, by reason of proceedings commenced by defendant, plaintiff was committed to the state hospital at Camarillo, and thereafter he was transferred to the state hospital at Mendocino. In August, 1950, he was restored to capacity. In December, 1947, while plaintiff was in the state hospital, defendant was appointed guardian of his estate. He obtained a divorce from her after he was released from the hospital. About February, 1951, he filed a petition for an accounting by her as guardian. About that time she com-

menced another proceeding wherein she sought to have him returned to the hospital.

Defendant testified that on March 9, 1947, about 1:30 a. m., plaintiff hit her head with a pistol and cut her tongue with a dagger; she went to the district attorney's office and signed a complaint charging plaintiff with assault with a deadly weapon; the day after he was released on bond, he and she went to the office of Mr. Rau, and defendant told Mr. Rau that they were living together again, and "he didn't want anything to happen, that he was sorry he did it," that defendant did not want to prosecute him; plaintiff also said, "By the way, I have talked to you about this deed, about some time executing a deed to my wife, I wonder if I executed it now would it help any?"; Mr. Rau said that if the judge knows that you are living together again it might have a bearing, but he could not promise anything; Mr. Rau also asked if that was the deed defendant had been talking about for some time; prior to the time they went to that office (about February, 1946, when plaintiff was preparing to go to a hospital), plaintiff had telephoned Mr. Rau and told him that defendant had advanced money for him, helped to save his home, restored his health, and that he wanted to make a joint tenancy deed; Mr. Rau made the deed while they were in his office. She also testified that at the preliminary examination she testified that no weapon was used in causing the injuries, and it was her desire that the case be dismissed. She also testified that before they were married she gave him $1,500 in cash for use in buying the house, and after the marriage and before the beating she gave him about $2,500 in cash; before they went to Mr. Rau's office the plaintiff wanted her to say that he never struck her and that she fell and hurt herself; plaintiff said that if she did not so testify he would kill himself; he also said that he would kill her; Mr. Rau represented her in the guardianship accounting and in a case to annul a marriage with Mr. Paulis.

Plaintiff testified further that on March 8, 1947, the defendant came home intoxicated, and he told her that she had to stop drinking or he would get a divorce; then she went into a tantrum and fell against a hinge on the bathroom door; he did not strike or touch her prior to the time she fell; after she fell he left immediately and stayed away from home that night; he returned the next day and saw that she had a bruise on the right side; he told her that her liquor bill was getting too high, and then she cried; he was arrested the next day.

Plaintiff also testified that he did not threaten to kill defendant, nor did he threaten to commit suicide; she never gave him anything for the deed; she never gave him $1,500 or any amount prior to marriage or at all.

Mr. Rau, called as a witness by defendant, testified that shortly before plaintiff and defendant came to his office (when the deed was made) defendant telephoned him, and at that time apparently plaintiff was with her—she would talk and then he would talk; the substance of the conversation was that she had advanced money to help him when he was ill and he felt obligated to give her a half interest in the house and he wanted to make the deed; prior to that conversation he had had conversations, either with her or him, regarding the deed; he prepared the deed while they were in his office; he first heard of the criminal matter while they were there; they both said that they were reconciled and they wanted the case dismissed; plaintiff wanted to know if the making of the deed would prejudice the case and whether it was the proper time to make the deed; he replied that defendant did not have control of the case, that all he could do would be to make a motion to dismiss, and if the parties were reconciled the deed would tend to corroborate a reconciliation and to strengthen the motion for dismissal; plaintiff asked him what his fee would be for attempting to get the dismissal; he replied $300; plaintiff said he did not have the money but he could get it from a friend. He also testified that after the conversation in his office, the three of them went to the district attorney's office; he told a deputy there that they wanted the case dismissed because the parties had reached a reconciliation; he showed the deputy the deed and said that the reconciliation was apparently bona fide; the deputy said that the arrest report indicates the husband had cut the wife's tongue with a dagger; the wife replied that the cut was due to slipping of her false teeth; he (Mr. Rau) appeared in court as attorney for the husband (plaintiff in the present case) and made the motion for dismissal.

The court found that on March 8, 1947, the plaintiff inflicted injuries upon defendant; it is not true that plaintiff used a pistol, or dagger, or other deadly weapon; on March 10, defendant caused plaintiff to be charged with assault with a deadly weapon, and also with violation of section 273d of the Penal Code; plaintiff was arrested on said charges and released on bail; on March 12, defendant represented to plaintiff and threatened him that unless he would execute

a joint tenancy deed to himself and defendant, covering said real property, she would see to it that he was prosecuted on said charges, but if he would execute the deed she would cause the charges to be dismissed; plaintiff was in fear of defendant and the circumstances in which he found himself; there was no consideration for said deed, except that defendant did cause the charges to be dismissed; said deed was procured by menace, duress, and against plaintiff's will and without consideration, and the deed is of no legal effect.

Appellant contends that the court erred in setting aside the deed. She argues that there was no evidence that any undue advantage was taken by her. The contention is without merit. There was ample evidence to support the findings.

■ Appellant also contends that the court erred in requiring her to employ an attorney other than her attorney of record. In support of her motion for a new trial, appellant filed an affidavit of Mr. Rau which stated that he was originally the attorney of record for defendant in the present case; the trial judge, in chambers, discussed the issues of the case with counsel for the parties, and during that discussion counsel for plaintiff indicated his intention of calling affiant as a witness regarding matters occurring in his office; affiant said he would testify if it became necessary in explanation of said matters; the judge stated that affiant would not be permitted to act as attorney for defendant and also be a witness, and he must make a choice of alternatives; after further discussion the judge stated that affiant would not be permitted to try the case and that arrangements must be made for substitution of another attorney, and the case would be continued to the following day for trial in his department or returned to the department of the presiding judge for reassignment; affiant informed the judge that defendant had previously made a contact with an attorney relative to representing her and it might be possible to procure a substitution of that attorney; the judge stated that such substitution was satisfactory; the substitution was accomplished on that day or the following morning and the trial was had with affiant appearing only as a witness.

Mr. Blount, attorney for plaintiff, also filed an affidavit for consideration upon the motion for a new trial. He stated therein, among other things, that in the discussion in chambers Mr. Rau said that he represented Mr. Gordon in the criminal case, that he represented Mrs. Gordon in civil matters, that he represented both of them in settling their disputes

and he prepared the joint tenancy deed described in the complaint; the judge then stated that he would not permit Mr. Rau to appear as counsel for defendant in defending against the execution of a deed which he had prepared while representing Mr. Gordon, and he would return the case to the master calendar for further proceedings; Mr. Blount and Mr. Rau stated to the judge that they preferred that the cause remain with the judge and be tried by him; Mr. Rau said that he had considered the fact that he had appeared for Mr. Gordon and he had discussed the case with another attorney, that Mrs. Gordon had also discussed the matter with another attorney, and that Mr. Rau would arrange to have counsel substituted and the case would go to trial the next morning; the judge suggested that Mr. Rau confer with his client; Mr. Rau, after conferring with Mrs. Gordon, announced to the judge that Mrs. Gordon did not desire the case continued, and she would have other counsel represent her in a trial on the next day; thereupon the case was continued to the next day, and Mrs. Gordon appeared in said courtroom the next day with attorney James H. O'Connor, who represented to the court that he had been substituted to represent Mrs. Gordon and he announced that defendant Mrs. Gordon was ready for trial; the trial proceeded on said day; during said trial defendant did not make any complaint to the judge that she desired a continuance of the trial or that she was dissatisfied with the manner of the trial until after the decision was rendered.

The statements in the affidavits are to be viewed in the light most favorable to the respondent. After the judge announced that Mr. Rau would not be permitted to represent defendant at the trial, it appears that Mr. Rau and defendant complied with the order without objection, and that the substituted counsel and defendant proceeded with and completed the trial without any objection to the order. This contention is not sustainable.

The judgment is affirmed. The purported appeal from the order denying the motion for a new trial is dismissed.

Shinn, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 2, 1954.