Filed 9/17/21  Villa v. City of Long Beach CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| FERMIN VILLA,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LONG BEACH,<br><br>        Defendant and Respondent. | B300054<br><br>(Los Angeles County<br>Super. Ct. No. BC518613) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick T. Madden, Judge.  Affirmed.

Balaban & Spielberger, Daniel K. Balaban, and Andrew J. Spielberger; Esner Chang & Boyer, Holly N. Boyer, and Shea S. Murphy for Plaintiff and Appellant.

Charles Parkin, City Attorney, and Theodore B. Zinger, Deputy City Attorney; Alderman & Hilgers and Allison R. Hilgers for Defendant and Respondent.

## INTRODUCTION

Fermin Villa sustained significant injuries when the driver of a car he was a passenger in lost control of the car and hit a 200-pound decorative boulder, which caused the car to roll over. After filing this action against the City of Long Beach for allegedly creating and maintaining a dangerous condition by placing the boulder in the median of the road, Villa went to trial twice and lost both times. In the first trial, a jury returned a verdict for the City, finding there was no dangerous condition. After the trial court failed to disclose it had received a note from a juror during deliberations about potential jury misconduct, however, the court granted Villa's motion for a new trial. The City appealed, and we affirmed. (See *Villa v. City of Long Beach* (Sept. 28, 2017, B268270) [nonpub. opn.] (*Villa I*).)

In the second trial, a jury again found there was no dangerous condition. Villa again moved for a new trial—the subject of this appeal—arguing that the jury engaged in misconduct during deliberations and that counsel for the City committed misconduct during closing argument. This time the trial court denied the motion for a new trial. Villa appealed again, arguing that, "in what appears to be an uncanny twist of fate," juror and attorney misconduct require a second reversal.

We conclude that the trial court did not err in denying Villa's second motion for a new trial and that Villa is not entitled to a third trial. Therefore, we affirm.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Villa Sues the City After He Is Injured in a Car Accident*

On August 20, 2012 Carlos Arrieta was driving a car in Long Beach. Villa was the passenger. As Arrieta drove on a ramp connecting two streets, the car rolled over and landed on its roof. Villa suffered injuries, including to his head and spine, which required hospitalization, surgery, and rehabilitative care. Villa subsequently sued the City for negligence and dangerous condition of public property, alleging the accident occurred when the car hit a boulder the City placed and maintained on the ramp.

B. *The Jury Finds in Favor of the City, but the Trial Court Grants Villa's Motion for a New Trial*

The first trial commenced in June 2015. The City presented evidence Arrieta had been drinking and driving recklessly shortly before the accident, which occurred when Arrieta was speeding and lost control of the car. Competing traffic engineering experts for Villa and the City testified about whether the ramp was in a dangerous condition. (*Villa I, supra*, B268270.)

On the second day of jury deliberations, a juror submitted a handwritten note to the clerk stating one of the other jurors was "talking about what they know as engineer" and asking the court to instruct the jurors again to decide the case based on the evidence, not on their life experiences. The jury, however, reached, and the trial court accepted, a verdict before the court disclosed the note to counsel. The jury found in favor of the City,

3

voting nine to three the ramp was not a dangerous condition. (*Villa I, supra*, B268270.)

Villa filed a motion for a new trial under Code of Civil Procedure section 657,[1] arguing that the court's failure to disclose the juror note was an irregularity in the proceeding and that there was juror misconduct. Four jurors submitted declarations stating that during deliberations the presiding juror repeatedly commented about his experience as an engineer and said that, based on his engineering experience, there was no problem with the design of the ramp. The trial court granted Villa's motion for a new trial, ruling that the court's failure to disclose the note to counsel prior to taking the verdict was an "[i]rregularity in the proceedings of the court by which [Villa] was prevented from having a fair trial" for purposes of section 657, subdivision (1). We affirmed the order granting a new trial. (*Villa I, supra*, B268270.)

C.    *A Second Jury Finds in Favor of the City*

1.    *Percipient Witnesses Testify About the Accident*

At the second trial, Villa's friend, Adrian Rayon, described the events leading to the accident. Rayon said that Arrieta started drinking at 1:00 p.m. and that he appeared intoxicated by the evening. At 8:30 or 9:30 p.m., Villa, Arrieta, Rayon, and Gregorio Aguilera went to the beach; Aguilera drove Rayon in one car, and Arrieta drove Villa in another, a Mazda RX7. At a gas station, Arrieta started drinking from a bottle of dark liquor. Back on the road, Arrieta stopped at a red light and began doing

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

4

"donuts,"[2] at one point spinning off and hitting the curb. Aguilera pulled his car up next to Arrieta's car, and Rayon, believing Arrieta was "obviously" drunk, told Arrieta to "stop doing that" and "calm down."

Arrieta sped away, with Aguilera following him. Five to 10 minutes later, as Arrieta approached the ramp, Rayon used his phone to record Arrieta's driving, thinking Arrieta might take the ramp quickly. As Rayon was filming, Arrieta "sped off into the curb and . . . flipped [the car] over" toward the passenger side.

A bus driver also witnessed the accident. He heard tires "peeling out" and what sounded like brakes "burning out." The bus driver said he thought Arrieta's car was going "too fast to be coming up that ramp" and that, based on the direction of the car's headlights, the car was "drifting or fishtailing" and "sliding . . . around the curve." The bus driver saw Arrieta's car hit the curb, hit the boulder, and then roll over twice.

2. *Villa's Experts Testify the Ramp Was Dangerous*

Edward Stevens, Villa's traffic engineering expert, testified that there were no problems with the City's design of the ramp because the plans were almost "straight out of the California Highway Design Manual for an onramp." After conducting a survey, however, Stevens determined the ramp was not constructed as designed. In particular, he said that, while the plans called for a 400-foot curve radius toward the end of the ramp, the radius as constructed was closer to 118 feet. As

_____

[2] "Doing donuts" is a driving maneuver involving "driving quickly in a tight circle" (*Guest v. Hansen* (2d Cir. 2010) 603 F.3d 15, 18), often in the middle of an intersection.

Stevens explained, "the curvature continues to be very sharp" at the point where a driver would "begin to accelerate," causing the driver to "drift over to the left side" (and toward the curb where the boulders were).

Stevens also testified that, in his opinion, there should have been a "chevron sign"—a sign, usually in yellow and black, with an arrow pointed to the right—on the ramp, to alert drivers there was a sharp curve. Finally, Stevens testified that the California Highway Design Manual required any fixed objects, such as the boulders on the ramp, to be at least 18 inches from the face of the curb and that the boulders served no traffic engineering purpose.

Villa's accident reconstruction expert, Thomas Green, acknowledged the car was going approximately 40 miles per hour when it hit the curb, which was well over the posted recommended speed of 15 miles per hour. But according to Green the critical speed at which the car would lose control and slide was 45 miles per hour, and Arrieta's car never reached that speed. Green stated that the boulder was between six to 18 inches away from the curb when the car hit it and that it "definitely" caused the car to roll.

### 3. *The City's Experts Testify It Was Not*

The City's traffic engineering expert, John Fisher, disagreed with almost everything Stevens said. Fisher concluded that the ramp conformed to the design plans and that the ramp was not in a dangerous condition. He testified Stevens's methodology for measuring the curve radius was faulty because

6

Stevens did not measure enough points on the ramp to accurately calculate the radii of the various compound curves in the ramp.[3]

Fisher testified the boulders were not unsafe because they were not so large that they were unmovable—as demonstrated by the fact that Arrieta's car in fact dislodged the boulder into the street—and because, in Fisher's opinion, they were at least 30 inches away from the face of the curb.  Fisher also testified that there had been no reported accidents during the previous five years involving a car crashing into the boulders or the area around them.  Finally, Fisher testified a chevron sign was not necessary on the ramp because there were other traffic control devices, including signs warning drivers of the ramp and curve and recommending a speed of 15 miles per hour; yield signs halfway up the ramp and at the end of the ramp; and a "high visibility ladder style crosswalk" at the end of the ramp.

The City's accident reconstruction expert, Stein Husher, calculated that the critical speed on the ramp at which a car would tend to slide was 36 miles per hour, not 45 miles per hour, as Green had testified.  Husher did not have an opinion on how the car rolled over because he said there was not enough information about how the car hit the curb.  But Husher did state that, in his opinion, the car "either rolled or tripped on the road surface or the curb . . . before it impacted" the boulder.

### 4.    *The Jury Again Finds for the City*

The first question on the special verdict form asked the jury whether "the property [was] in a dangerous condition at the

---

[3]    According to Stevens, "compound curves are where two curves meet that have different . . . radii . . . designed so that one arc of a certain radius meets another arc of another radius."

7

time of the accident." The court instructed the jury a dangerous condition of public property is one that "creates a substantial risk of injury to members of the general public when the property is used with reasonable care and in a reasonably foreseeable manner." During closing argument, counsel for the City showed the jury a slide that defined "substantial" as "of ample or considerable amount or quantity" (based on a dictionary definition), and counsel argued substantial meant "frequently going to happen." Villa did not object.

On the second day of deliberations, the jury asked the court to provide the "legal definition of substantial risk" for the instruction on dangerous condition. In response to the jury's question, Villa asked the court to instruct the jury to disregard any definition of "substantial risk" other than the definition provided by the court and to give the jury the definition of "dangerous condition" in Government Code section 830. (See Gov. Code, § 830, subd. (a) ["'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."].) The court agreed with Villa, instructed the jury that "statements of law by counsel are not evidence," and gave the definition of "dangerous condition" in Government Code section 830.

On the fourth day of deliberations, the jurors advised the court they were deadlocked on whether there was a dangerous condition. The trial court ordered the jury to resume deliberating. The next day, by a nine to three vote, the jury returned a verdict in favor of the City, finding there was no

8

dangerous condition.  The trial court entered judgment in favor of the City.

> D.    *Villa Again Files a Motion for a New Trial, Which This Time the Trial Court Denies*

Villa again filed a motion for a new trial under section 657, subdivision (1), arguing both jury misconduct and attorney misconduct.  Villa submitted the declarations of two jurors, Hector Velazquez and Leola Oliver.  According to Jurors Velazquez and Oliver, during deliberations two members of the jury, Patrick Roselli and Kerry Oda, referred to themselves as experts.  Juror Roselli, a mechanical engineer, said (according to Jurors Velazquez and Oliver) that based on his expertise and mechanical engineering experience the accident could not have happened the way Villa's experts described.  Juror Oda, who (according to Jurors Velazquez and Oliver) referred to himself as an "'expert in high performance vehicles like the RX7,'" stated that "'the RX7 would fishtail because it was rear wheel drive'" and that Villa's experts were wrong.  Jurors Velazquez and Oliver also stated in their declarations that two jurors, Marci Dusseau and Stacey Smith, made several improper comments, including that the City could not afford to pay an award of damages and taxes would increase if the jury awarded Villa money damages; that Villa was suing the City because the driver (Arrieta) had no insurance; and that the City should not have to pay the fees of Villa's attorneys, who would take 50 percent of any damages award.

The City opposed the motion, submitting declarations from four jurors: Roselli, Dusseau, Mira Patel, and Katrina Anne Schutte.  Juror Roselli admitted telling the other jurors he was a

9

mechanical engineer, but denied he ever referred to himself as an expert or expressed any opinion based on his expertise or mechanical engineering experience. And none of the four jurors recalled either Juror Roselli or Juror Oda stating that, based on his personal experience or expertise, he did not believe the plaintiff's experts, or offering any other opinion based on his personal experience.

Juror Dusseau denied ever mentioning taxes, insurance, or attorneys' fees, or making a similar comment. And none of the four jurors remembered Juror Dusseau, Juror Smith, or any other juror making similar comments.

The trial court denied the motion. Regarding the jury misconduct argument, the court ruled that the declarations "do not establish prejudicial misconduct by the jurors." Regarding the attorney misconduct argument, the court ruled counsel for the City's use of a dictionary definition for the term "substantial" was misconduct. The court ruled, however, that Villa did not timely object to the misconduct during closing argument and that the misconduct was not prejudicial because the court gave a curative instruction during deliberations and none of the six jurors stated the dictionary definition ever came up during deliberations. Villa timely appealed from the judgment.

# DISCUSSION

### A. *The Trial Court Did Not Err in Denying Villa's Motion for a New Trial Based on Jury Misconduct*

#### 1. *Applicable Law and Standard of Review*

"A trial court undertakes a three-step process to evaluate a motion for new trial based on juror misconduct" under section 657. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 278.) "The trial court must first determine whether the declarations supporting the motion are admissible under Evidence Code section 1150.[4] Second, if all or part of the declarations are admissible, the trial court determines whether the facts establish misconduct. If the trial court finds misconduct occurred the trial court then determines whether the misconduct was prejudicial." (*Hernandez,* at p. 278; see *Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345 (*Barboni*).) Villa, as the moving party, "bears the burden of establishing juror misconduct." (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 625; see *Barboni*, at p. 349 ["the burden of establishing juror misconduct lies with the party moving for a new trial"].)

"On review from a trial court's 'determin[ation of] whether misconduct occurred, "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence."'" (*Barboni, supra,*

---

[4] The trial court excluded portions of declarations that reflected either how the deliberations influenced jurors to agree to the verdict or the jurors' mental processes. (See Evid. Code, § 1150, subd. (a).) Villa does not challenge the court's evidentiary rulings.

210 Cal.App.4th at p. 345; accord, *Hernandez v. First Student, Inc*, *supra*, 37 Cal.App.5th at p. 278; *Stokes v. Muschinske* (2019) 34 Cal.App.5th 45, 53.)  Where, as here, "the motion for new trial [is] a battle of the declarations," it is "'the trial court that must assess the credibility of affiants or declarants, and the trial court is entitled to believe one over the other.'" (*Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362, 372-373.)  "[T]he appellate court defers to the trial court's factual findings and independently assesses prejudice." (*Id.* at p. 373.)

The trial court's ruling the declarations did "not establish prejudicial misconduct" is ambiguous:  It could mean the trial court found no misconduct, no prejudice, or neither misconduct nor prejudice.  Relying on this ambiguity, Villa argues that, because the trial court did not expressly find there was no misconduct, we must conduct "an independent review of whether misconduct occurred."  That is not the law.

Where, as here, the trial court denies a motion for a new trial supported by declarations, we view the declarations "in the light most favorable to the [prevailing party]" (*Gordon v. Gordon* (1954) 126 Cal.App.2d 481, 486) and "assume . . . the trial court impliedly resolved [any evidentiary] conflicts in favor of the prevailing party" (*Andrews v. County of Orange* (1982) 130 Cal.App.3d 944, 957, disapproved on another ground in *People v. Nesler* (1997) 16 Cal.4th 561 582, fn. 5]; see *Young v. Brunicardi* (1986) 187 Cal.App.3d 1344, 1350-1351 ["[t]he determination by a trial court of a motion for a new trial submitted on affidavits which present conflicting facts is a determination of those controverted facts in favor of the prevailing party"]).  Where the trial court's order "'is against the party who has the burden of proof, . . . unless the trial court

12

makes specific findings of fact in favor of the losing plaintiff, we presume the trial court found the plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.'" (*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270; accord, *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.) Viewing the declarations and resolving conflicts in the light most favorable to the City, we conclude Villa did not prove any of the jurors engaged in misconduct.

### 2. *Villa Did Not Show Juror Misconduct*

#### a. *Juror Roselli*

In his declaration Juror Roselli stated he told the other jurors that he was an engineer, that he did not believe the ramp was in a dangerous condition, and that he did not find Villa's experts' version of the accident plausible. As discussed, however, Juror Roselli stated that he never said he was an expert or that he was giving an expert opinion. To the contrary, Juror Roselli said he told the other jurors, "I am definitely not a Civil Engineer or an accident reconstructionist and that is not my field."

None of Juror Roselli's statements evidenced misconduct. As the Supreme Court has held: "All the jurors, including those with relevant personal backgrounds, [are] entitled to consider [the] evidence and express opinions regarding it . . . . [I]f we allow jurors with specialized knowledge to sit on a jury, and we do, we must allow those jurors to use their experience in evaluating and interpreting that evidence. Moreover, during the

13

give and take of deliberations, it is virtually impossible to divorce completely one's background from one's analysis of the evidence. We cannot demand that jurors, especially lay jurors not versed in the subtle distinctions that attorneys draw, never refer to their background during deliberations." (*People v. Steele* (2002) 27 Cal.4th 1230, 1266; accord, *People v. Loker* (2008) 44 Cal.4th 691, 753; see *In re Malone* (1996) 12 Cal.4th 935, 963 ["It is not improper for a juror, regardless of his or her educational or employment background, to express an opinion on a technical subject, so long as the opinion is based on the evidence at trial."].)

While a "'juror may not express opinions based on asserted personal expertise that is different from or contrary to . . . the evidence'" (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 77), Juror Roselli denied the assertions by Jurors Velazquez and Oliver that he (Juror Roselli) said he was an expert and that his opinions were based on his engineering background.  And Jurors Dusseau, Patel, and Schutte all stated they did not recall any juror referring to himself or herself as an expert or expressing an opinion based on special knowledge.  Accepting, as we must, Juror Roselli's and the other jurors' version of events, there was no misconduct on the part of Juror Roselli.

Juror Roselli admitted in his declaration he told the other jurors he "did not believe a car going a reasonable speed, 20 to 25 miles per hour, would have had a substantial risk of rolling over." In his reply brief, Villa asserts this statement must have been "expert opinion" because there was no evidence at trial to support it.

Except that there was.  Both Green, Villa's accident reconstruction expert, and Husher, the City's accident reconstruction expert, agreed that the critical speed—the speed

14

at which "the centrifugal forces on the car can no longer be contained by the tire forces if the tire is in contact with the roadway"—was at least 36 miles per hour (i.e., more than 20 to 25 miles per hour). Stevens, Villa's traffic engineering expert, agreed there were no safety problems with the ramp's design, and Fisher, the City's traffic engineering expert, testified the ramp as constructed conformed with the design. Fisher testified that the boulders in the median—the objects that Villa claimed caused the car to flip—were at least 30 inches from the curb, which was a greater distance than required by the California Highway Design Manual. There had been no similar accidents on the ramp during the past five years. And Fisher opined that, considering all of its characteristics, the ramp was "not a dangerous condition" and that there was "no substantial risk of harm if you're driving prudently and safely and adhering to the . . . traffic control devices." All of this evidence supported an inference that a car going 20 to 25 miles per hour on the ramp would not have a substantial risk of rolling over. (See *I-CA Enterprises, Inc. v. Palram Americas, Inc.* (2015) 235 Cal.App.4th 257, 291 ["The jury is entitled 'to make any logical and reasonable deduction' from the evidence before it."]; *Kawamura v. Honek* (1932) 127 Cal.App. 509, 511 ["'in construing and applying testimony, reasonable inferences and deductions may be made by the jury, and conclusions may be reached that lie quite beyond the mere letter of the evidence'"].)

> b.     *Juror Dusseau*

As did Juror Roselli, Juror Dusseau denied she made the allegedly improper statements attributed to her by Jurors Velazquez and Oliver. Juror Dusseau stated she never said that

15

the City would not be able to pay a judgment, that a verdict for Villa would cause taxes to increase, or that Villa's lawyer would take 50 percent of any damages award. She also stated that she did not make "any comments similar to those" and that she did not understand how any of her comments "could have been misconstrued." Jurors Roselli, Patel, and Schutte all agreed they did not recall any juror making any similar comments. Again, accepting Juror Dusseau's version of events, confirmed by Jurors Roselli, Patel, and Schutte, there was no misconduct here.

### c. *Juror Oda*

Juror Oda did not submit a declaration in opposition to the motion for a new trial denying the statements attributed to him by Jurors Velazquez and Oliver. Villa asserts that Juror Oda's misconduct was therefore "unrefuted." Not true.

According to Jurors Velazquez and Oliver, Juror Oda referred to himself as an expert in high performance vehicles and said the accident could not have occurred as Villa's expert described because the Mazda RX7 was "'low to the ground,'" "'powerful,'" and had "'rear wheel drive.'" While Juror Oda did not rebut the statements by Jurors Velazquez and Oliver, Jurors Roselli, Dusseau, Patel, and Schutte all stated they did not recall Juror Oda referring to himself as an expert. Nor did any of these four jurors recall Juror Oda expressing opinions that were not based on the evidence admitted at trial. Juror Roselli remembered Juror Oda "worked on high performance vehicles," but he did not recall Juror Oda saying that, based on his experience working with high performance cars, Villa's experts were wrong. Juror Patel remembered Juror Oda worked with cars, but did not remember Juror Oda stating that, based on his

16

experience, Villa's experts were wrong, nor did Juror Patel remember Juror Oda expressing an opinion "based on information [the jurors] had not heard at trial." Juror Schutte confirmed that none of the jurors, including Juror Oda, expressed an opinion "other than to discuss [the juror's] own interpretation of the testimony and evidence." And Juror Dusseau did not remember Juror Oda saying anything about cars, other than it would have been helpful to know more about the car involved in the accident.

In his reply brief, Villa appears to argue the statements by Jurors Roselli, Dusseau, Patel, and Schutte, that they did not "recall" Juror Oda's alleged misconduct, did not refute the statements by Jurors Velazquez and Oliver that the misconduct occurred. Again, Villa is incorrect. In *Barboni*, *supra*, 210 Cal.App.4th 340 the plaintiff made essentially the same argument after the trial court denied her motion for a new trial based on juror misconduct, arguing the failure of five jurors to recall an allegedly improper discussion during deliberations did "not mean such discussion did not happen." (*Id.* at p. 350.) As the court in *Barboni* explained, this type of argument "misses several important points, including the standard of review on appeal and the fact that it was [the moving party's] burden to establish misconduct, not the [opposing party's] burden to establish that it did not occur." (*Ibid.*) Here, too, it was Villa's burden to establish that Juror Oda made the allegedly improper statements. That only two of the 12 jurors corroborated the statements, and four jurors did not recall them, shows it was not "unrefuted" that Juror Oda said something improper. Viewing the evidence in the light most favorable to the court's order, we must assume he did not.

17

There was one statement by Juror Oda that the City arguably did not rebut. According to Juror Velazquez, Juror Oda told Juror Velazquez while they were having lunch that he (Juror Oda) "did everything to get out of there," including telling the judge that he could not be fair and that he worked "on high performance stuff" and "would not be a good juror." According to Villa, this showed that Juror Oda concealed bias during voir dire examination.

But even assuming Juror Oda made these comments, they were not sufficient to show bias that would have precluded him from serving on the jury. "'[T]he concealment during voir dire of a bias, belief or state of mind which prevents a juror from following the court's instructions and acting in an impartial manner constitutes misconduct.'" (*Stokes v. Muschinske, supra*, 34 Cal.App.5th at p. 52; see *Tapia v. Barker* (1984) 160 Cal.App.3d 761, 765.) "'"[W]hether a juror is biased in this regard [is] within the discretion of the trial court."'" (*Stokes*, at p. 53; see *People v. San Nicolas* (2004) 34 Cal.4th 614, 644.)

Juror Oda's statements suggested he did not want to serve on the jury, which standing alone does not show impermissible bias. (See *Stokes v. Muschinske, supra*, 34 Cal.App.5th at p. 54 [juror's statement that he had a "big problem" with the time required to serve on the jury and the judge's observation that the juror was "about ready to jump through the front of the jury box" did not show bias].) Nor did the fact that Juror Oda knew about cars. (See *People v. Steele, supra*, 27 Cal.4th at p. 1266 [jurors with "relevant personal backgrounds" are entitled to consider evidence and express opinions].) And regardless of Juror Oda's statements he was not "fair" and not a "good juror," he did not say he had prejudged the case, would refuse to consider the

18

evidence, harbored any animus toward Villa, or was not able to be impartial and follow the judge's instructions.

####    d.    *Juror Smith*

Like Juror Oda, Juror Smith did not submit a declaration to rebut the statements attributed to her by Jurors Velazquez and Oliver. But again, the declarations of Jurors Roselli, Dusseau, Patel, and Schutte rebutted the evidence of purported misconduct. Each of these four jurors did not recall anyone making comments about Arrieta not having insurance, taxes increasing if the City had to pay a judgment, or Villa's attorneys' fees.[5]

### B.    *The Trial Court Did Not Err in Denying Villa's Motion for a New Trial Based on Attorney Misconduct*

The trial court ruled counsel for the City committed misconduct by using a dictionary definition of "substantial" when describing a dangerous condition of property as one that creates a substantial risk of injury. The court ruled, however, the misconduct did not cause any prejudice.

"'Attorney misconduct is an irregularity in the proceedings and a ground for a new trial'" under section 657, subdivision (1). (*Jackson v. Park* (2021) 66 Cal.App.5th 1196, 1213; see *Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 148.) But as with juror misconduct, "'[i]t is not enough for a party to show attorney misconduct. In order to justify a new trial, the party must

---

[5]    Because Villa did not show there was misconduct, we need not independently review the record to determine whether the alleged misconduct, assuming it occurred, caused prejudice. (See *Barboni, supra,* 210 Cal.App.4th at p. 351.)

demonstrate that the misconduct was prejudicial.'" (*Jackson*, at p. 1216; see *Martinez v. Department of Transportation* (2015) 238 Cal.App.4th 559, 568; *Garcia*, at p. 149.)

"In determining whether [attorney] misconduct was prejudicial, 'a reviewing court makes "an independent determination as to whether the error was prejudicial."'" (*Jackson v. Park*, *supra*, 66 Cal.App.5th at p. 1216; see *Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 631; *Garcia v. ConMed Corp.*, *supra*, 204 Cal.App.4th at p. 149.) "The court 'must determine whether it is reasonably probable [that the [party asserting misconduct occurred]] would have achieved a more favorable result in the absence of that portion of [attorney conduct] now challenged.'" (*Jackson*, at p. 1216; see *Garcia*, at p. 149.) In making this determination, "we evaluate the following factors: '(1) the nature and seriousness of the misconduct; (2) the general atmosphere, including the judge's control of the trial; (3) the likelihood of actual prejudice on the jury; and (4) the efficacy of objections or admonitions under all the circumstances.'" (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 296; see *Sabella v. Southern Pac. Co.* (1969) 70 Cal.2d 311, 320-321.)

Here, even if counsel for the City committed misconduct by using an improper definition of "substantial," none of the factors supports a finding of prejudice.[6] The alleged misconduct was, at

---

[6]     We assume without deciding Villa did not forfeit his argument counsel for the City committed misconduct by failing initially to object during closing argument. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1411-1412 ["A party ordinarily cannot complain on appeal of attorney misconduct at trial unless the party timely objected to the misconduct and requested that the jury be admonished."].)

20

best, minor. Counsel for the City described a substantial risk as one that is "frequently going to happen" or one of "ample or considerable amount or quantity." This did not significantly modify or add much to the definition in Government Code section 830, which defines substantial risk only as one "distinguished from a minor, trivial, or insignificant" risk. (See *Ford v. City of Los Angeles* (2020) 47 Cal.App.5th 277, 289-290 [no attorney misconduct where, during closing argument, counsel used "'heck of a lot'" to define "substantial factor," rather than defining the term as a factor that was more than remote or trivial].) And counsel for the City's comment "was fleeting, comprising just two sentences" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802-803), in an otherwise lengthy closing argument. (See *id.* at p. 803 [no prejudice given the "brevity and obliqueness of the challenged comments"].)

Moreover, there was little to no likelihood of actual prejudice in light of the trial court's admonition to the jury during deliberations. ""It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury . . ., correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have."" (*Sabella v. Southern Pac. Co.*, *supra*, 70 Cal.2d at p. 318; accord, *Janice H. v. 696 North Robertson, LLC* (2016) 1 Cal.App.5th 586, 604; see *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1412 ["Attorney misconduct is incurable only in extreme cases."].) When the jury asked the trial court for a definition of substantial risk, the trial court gave the correct definition and, at counsel for Villa's request, instructed the jury that statements of law by counsel are not evidence. That was sufficient. (See *Ford v. City of Los Angeles*, *supra*, 47 Cal.App.5th

21

at pp. 289-290 ["potential jury confusion" from counsel's use of "'heck of a lot'" to define "substantial factor" was "cured by the court's thorough instructions to the jury"].)

Villa argues the jury's question during deliberations, and the declarations submitted by the jurors, indicated that several jurors were confused about the definition of substantial risk. True, the jurors may have struggled with how to apply a legal concept to the facts in this case, but that does not show that the City's argument confused the jury or that it is reasonably probable Villa would have obtained a more favorable verdict in the absence of counsel's comment. Indeed, Jurors Velazquez and Oliver confirmed that, even after receiving and reading the judge's instruction based on Government Code section 830, the jurors still had trouble applying "substantial risk" to the facts. And none of the jurors who submitted declarations, including Jurors Velazquez and Oliver, stated that any juror brought up counsel for the City's brief mention of the term "substantial" during closing argument.[7]

---

[7] According to Jurors Velazquez and Oliver, Juror Smith told jurors to "forget" about the judge's instruction on substantial risk when they were having trouble applying it to the facts. But the other four jurors who submitted declarations did not recall Juror Smith saying this, and as discussed, we resolve evidentiary conflicts in favor of the court's order. In any event, evidence of Juror Smith's purported statements does not show counsel's brief comment caused the confusion or resulted in prejudice.

## DISPOSITION

The judgment is affirmed.  The City is to recover its costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.